**FITAPELLI & SCHAFFER, LLP**
Brian S. Schaffer
Frank J. Mazzaferro
28 Liberty Street, 30th Floor
New York, NY 10005
Telephone: (212) 300-0375

**WERMAN SALAS P.C.**
Douglas M. Werman, *pro hac vice forthcoming*
77 W. Washington St., Suite 1402
Chicago, IL 60602
Telephone: (312) 419-1008

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **PATRICK IMBARRATO and NICK PRAINO** on **behalf of themselves and all others similarly situated,**<br><br>**Plaintiffs,**<br><br>-against-<br><br>**BANTA MANAGEMENT SERVICES, INC., BANTA BWW MDT, LLC, BANTA NINE MALL, LLC, BANTA BWW ON, LLC, BANTA BWW NB, LLC, GEORGE E. BANTA, SR., and GEORGE E. BANTA, JR.,**<br><br>**Defendants.** | **No.**<br><br>**CLASS ACTION COMPLAINT** |

Plaintiff Patrick Imbarrato and Nick Praino, individually and on behalf of all others similarly situated, as class representatives, upon personal knowledge as to themselves, and upon information and belief as to other matters, allege as follows:

### NATURE OF THE ACTION

1.      This lawsuit seeks to recover minimum wages, overtime pay and other wages for Plaintiffs and their similarly situated co-workers – servers, bussers, bartenders, and other "tipped workers" – who work or have worked at  Banta Management Services, Inc., Banta BWW, MDT LLC, Banta Nine Mall, LLC, Banta BWW ON, LLC, Banta BWW NB, LLC, George E. Banta, Sr., and George E. Banta, Jr. (collectively "Buffalo Wild Wings" or "Defendants").

2.      Defendants are a hospitality group focused on real estate development and management.[1] Based out of Poughkeepsie, New York, Defendants, through Banta Management Services, Inc.,[2] control and operate a portfolio of companies including Super 8 Hotels, Howard Johnson Hotels, Holiday Inn Express Hotels, Uno's Pizzeria & Grill restaurants, and Buffalo Wild Wings restaurants.[3] The Banta family has operated these companies for three generations.[4]

3.      Buffalo Wild Wings is a casual dining restaurant and sports bar franchise in the United States, Canada, Mexico and the Philippines. Defendants own and operate 3 Buffalo Wild Wing restaurants located at: 567 Rt. 211 E., Middletown, New York 10947; 1794 South Rd., Wappingers Falls, New York 12590; and 768 State Rte. 28, Oneonta, New York 13820.

4.      At all times relevant, Defendants have maintained control, oversight, and direction over Plaintiffs and similarly situated employees, including the ability to hire, fire, and discipline them.

5.      At all times relevant, Defendants paid Plaintiffs and others similarly situated tipped workers at the "tipped" minimum wage rate, however, Defendants failed to meet the strict statutory requirements that would permit Buffalo Wild Wings to apply the reduced minimum wage to tipped workers.

6.      Specifically, Defendants maintained a policy and practice whereby they failed to satisfy the strict statutory requirements under the FLSA and NYLL that would allow them to pay this reduced minimum wage (take a "tip credit").

---

[1] http://www.bantamanagement.com/index.html
[2] Ex. A, Deposition of George Edward Banta, Jr. ("Banta Dep.") at 7:9-11.
[3] *Id.*
[4] *Id.*; Ex. B, Declaration of George E. Banta Jr., ¶ 2.; Ex. A, Banta Dep. at 6:14-7:5.

7.     Additionally, Defendants maintained a policy and practice whereby tipped workers were required to spend a substantial amount of time, 2 hours or more than 20%, performing non-tip producing side work *related* to the employee's tipped occupation.

8.     Defendants also maintained a policy and practice whereby tipped workers were required to perform non-tip producing side work *unrelated* to the employee's tipped occupation. As these duties were unrelated to the tipped profession, tipped workers are engaged in a dual occupation while being compensated at the tip credit rate rather than the full minimum wage.

9.     At Buffalo Wild Wings, tipped workers were required to perform side work duties that included but were not limited to: (1) cleaning the bathroom; (2) cleaning out sinks; (3) washing dishes; (4) portioning sauces into 3 oz containers; (5) breaking down the beverage station and cleaning it thoroughly; (6) rolling large amounts of silverware; (7) cleaning and breaking down the expeditor's line; (8) sweeping; (9) cleaning the POS station; (10) cleaning the patio; (11) washing walls; (12) rotating stock / condiments; (13) setting up the expeditors' line, fillings with ice and condiments; (14) setting up the beverage station; (15) making coffee and tea for the restaurant; and (16) stocking napkins, cups, wet naps, condiments, and paper boats.

10.     Tipped workers were required by Defendants to perform side work at the beginning, during, and at the end of their shifts.

11.     Defendants required tipped workers to perform most side work before the restaurant opened or after the restaurant closed and customers had left.

12.     During these periods of time,  tipped workers were compensated at the tipped minimum wage rate rather than the full minimum wage rate.

13.     The duties that Defendants required tipped workers to perform are duties that are customarily assigned to "back-of-the-house" employees in other restaurants, who typically receive at least the full minimum wage rate.

14.     The side work described above is not specific to particular customers, tables, or sections, but is performed in mass quantities for the entire shift or for future shifts.

15.     Defendants' timekeeping system was capable of tracking multiple job codes for different work assignments.

16.     Throughout Plaintiffs' employment, Defendants maintained a policy and practice whereby tipped workers were not paid spread-of-hours pay when the length of the interval between the beginning and end of their workday – including working time plus time off for meals plus intervals off duty – was greater than 10 hours.

17.     Defendants also failed to supply tipped workers with call-in pay when they were required to leave prior to working for 3 hours.

18.     Plaintiffs bring this action on behalf of themselves and similarly situated current and former tipped workers who elect to opt in to this action pursuant to the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* ("FLSA"), and specifically, the collective action provision of 29 U.S.C. § 216(b), to remedy violations of the wage-and-hour provisions of the FLSA by Defendants that have deprived Plaintiffs and others similarly situated of their lawfully earned wages.

19.     Plaintiffs also bring this action on behalf of themselves and similarly situated current and former tipped workers in New York pursuant to Federal Rule of Civil Procedure 23 ("NY Rule 23") to remedy violations of the New York Labor Law ("NYLL") Article 6, §§ 190 *et*

*seq.*, and Article 19, §§ 650 *et seq.*, and the supporting New York State Department of Labor Regulations.

## THE PARTIES

**Plaintiffs**

### Patrick Imbarrato

20.     Patrick Imbarrato ("Imbarrato") is an adult individual who is a resident of New York.

21.     Imbarrato was employed by Defendants as a server at the Buffalo Wild Wings located at 567 Route 211 East, Middletown, New York 10941 from in or around August 2013 through the February 8, 2018.

22.     Defendants owned and operated the Buffalo Wild Wings restaurant at which Imbarrato worked.

23.     Imbarrato is a covered employee within the meaning of the FLSA and the NYLL.

24.     A written consent form for Imbarrato is being filed with this Class Action Complaint.

### Nick Praino

25.     Nick Praino ("Praino") is an adult individual who is a resident of Florida.

26.     During his employment with Buffalo Wild Wings, Priano's last name was Cahill.

27.     Praino was employed by Defendants as a server and host at the Buffalo Wild Wings located at 567 Route 211 East, Middletown, New York 10941 from in or around May 2013 through November 2013 and from in or around December 2014 through February 2015.

28.     Praino's last name while employed with Defendants was Cahill.

29.     Defendants owned and operated the Buffalo Wild Wings restaurant at which Praino worked.

30.     Praino is a covered employee within the meaning of the FLSA and the NYLL.

31.     A written consent form for Praino is being filed with this Class Action Complaint.

**Defendants**

32.     Defendants Banta Management Services, Inc., Banta BWW MDT, LLC, Banta Nine Mall, LLC, Banta BWW ON, LLC, Banta BWW NB, LLC, George E. Banta, Sr., and George E. Banta, Jr., jointly employed Plaintiffs and similarly situated employees at all times relevant.

33.     Each Defendant has had substantial control over Plaintiffs' and similarly situated employees' working conditions, and over the unlawful policies and practices alleged herein.

34.     Defendants are part of a single integrated enterprise that has jointly employed Plaintiffs and similarly situated employees at all times relevant.

35.     During all relevant times, Defendants have been Plaintiffs' employers within the meaning of the FLSA and the NYLL.

**Banta Management Services, Inc.**

36.     Together with the other Defendants, Banta Management Services, Inc. ("Banta Management") owned and/or operated Buffalo Wild Wings restaurants during the relevant period.

37.     Banta Management's principal executive office is located at 842 Main Street, Poughkeepsie, New York 12603.

38.     Banta Management is a domestic corporation doing business in New York State.

39.     At all relevant times, Banta Management maintained control, oversight, and

direction over Plaintiffs and similarly situated employees, including, but not limited to, hiring,

firing, disciplining, timekeeping, payroll, and other employment practices.

40.     Banta Management operates the Buffalo Wild Wings restaurants, and other

businesses owned by Defendants.[5] Banta Management provides oversight and operational

guidance to the Buffalo Wild Wings restaurants.[6]

41.     Banta Management allowed employees to freely transfer between, or be shared

by, the various Buffalo Wild Wings restaurants it operates without retraining such employees.

42.     Banta Management applied the same employment policies, practices, and

procedures to all tipped workers at its Buffalo Wild Wings restaurants, including policies,

practices, and procedures with respect to payment of minimum wages, overtime pay, and other

wages.

43.     Upon information and belief, at all relevant times Banta Management had an

annual gross volume of sales in excess of $500,000.

44.     Pursuant to NY BCL §630, Plaintiffs hereby demand Banta Management permit

an examination of their records of shareholders under NY BCL §624 so that liability may be

imposed on their respective top ten shareholders for unpaid wages.

**Banta BWW MDT, LLC**

45.     Together with the other Defendants, Banta BWW MDT, LLC (" BWW MDT")

owned and/or operated Buffalo Wild Wings restaurants during the relevant period.

46.     BWW MDT's principal executive office is located at 842 Main Street,

Poughkeepsie, New York 12603.

47.     BWW MDT is a domestic corporation doing business in New York State.

---

[5] Ex. A, Banta Dep., at 6:14-7:11.
[6] *Id.*

48.     BWW MDT is a subsidiary of Banta Management.

49.     At all relevant times, BWW MDT maintained control, oversight, and direction over Plaintiffs and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, and other employment practices.

50.     BWW MDT allowed employees to freely transfer between, or be shared by, the various Buffalo Wild Wings restaurants it operates without retraining such employees.

51.     BWW MDT applied the same employment policies, practices, and procedures to all tipped workers at its Buffalo Wild Wings restaurants, including policies, practices, and procedures with respect to payment of minimum wages, overtime pay, and other wages.

52.     Upon information and belief, at all relevant times BWW MDT had an annual gross volume of sales in excess of $500,000.

53.     Pursuant to NY LLCL § 609, Plaintiffs intend to hold BWW MDT's top 10 members with the largest percentage of ownership jointly and severally liable for these unpaid wages.

**Banta Nine Mall, LLC**

54.     Together with the other Defendants, Banta Nine Mall, LLC ("Nine Mall") owned and/or operated Buffalo Wild Wings restaurants during the relevant period.

55.     Nine Mall's principal executive office is located at 842 Main Street, Poughkeepsie, New York 12603.

56.     Nine Mall is a domestic corporation doing business in New York State.

57.     Nine Mall is a subsidiary of Banta Management.

58.     At all relevant times, Nine Mall maintained control, oversight, and direction over Plaintiffs and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, and other employment practices.

59.     Nine Mall allowed employees to freely transfer between, or be shared by, the various Buffalo Wild Wings restaurants it operates without retraining such employees.

60.     Nine Mall applied the same employment policies, practices, and procedures to all tipped workers at its Buffalo Wild Wings restaurants, including policies, practices, and procedures with respect to payment of minimum wages, overtime pay, and other wages.

61.     Upon information and belief, at all relevant times Nine Mall had an annual gross volume of sales in excess of $500,000.

62.     Pursuant to NY LLCL § 609, Plaintiffs intend to hold Nine Mall's top 10 members with the largest percentage of ownership jointly and severally liable for these unpaid wages.

**Banta BWW ON, LLC**

63.     Together with the other Defendants, Banta BWW ON, LLC ("BWW ON") owned and/or operated Buffalo Wild Wings restaurants during the relevant period.

64.     BWW ON's principal executive office is located at 842 Main Street, Poughkeepsie, New York 12603.

65.     BWW ON is a domestic corporation doing business in New York State.

66.     BWW ON is a subsidiary of Banta Management.

67.     At all relevant times, BWW ON maintained control, oversight, and direction over Plaintiffs and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, and other employment practices.

68.     BWW ON allowed employees to freely transfer between, or be shared by, the various Buffalo Wild Wings restaurants it operates without retraining such employees.

69.     BWW ON applied the same employment policies, practices, and procedures to all tipped workers at its Buffalo Wild Wings restaurants, including policies, practices, and

procedures with respect to payment of minimum wages, overtime pay, and other wages.

70.     Upon information and belief, at all relevant times BWW ON had an annual gross volume of sales in excess of $500,000.

71.     Pursuant to NY LLCL § 609, Plaintiffs intend to hold BWW ON's top 10 members with the largest percentage of ownership jointly and severally liable for these unpaid wages.

**Banta BWW NB, LLC**

72.     Together with the other Defendants, Banta BWW NB, LLC ("BWW NB") owned and/or operated Buffalo Wild Wings restaurants during the relevant period.

73.     BWW NB's principal executive office is located at 842 Main Street, Poughkeepsie, New York 12603.

74.     BWW NB is a domestic corporation doing business in New York State.

75.     BWW NB is a subsidiary of Banta Management.

76.     At all relevant times, BWW NB maintained control, oversight, and direction over Plaintiffs and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, and other employment practices.

77.     BWW NB allowed employees to freely transfer between, or be shared by, the various Buffalo Wild Wings restaurants it operates without retraining such employees.

78.     BWW NB applied the same employment policies, practices, and procedures to all tipped workers at its Buffalo Wild Wings restaurants, including policies, practices, and procedures with respect to payment of minimum wages, overtime pay, and other wages.

79.     Upon information and belief, at all relevant times BWW NB had an annual gross volume of sales in excess of $500,000.

80.     Pursuant to NY LLCL § 609, Plaintiffs intend to hold BWW NB's top 10

members with the largest percentage of ownership jointly and severally liable for these unpaid wages.

**Individual Defendants**

81.     George E. Banta, Sr., and George E. Banta, Jr., ("Individual Defendants"), maintained control over, oversaw, and directed the operation of Buffalo Wild Wings, including its employment practices, during the relevant period.

82.     Upon information and belief, the Individual Defendants manage and/or operate Buffalo Wild Wings.

83.     During all times relevant, the Individual Defendants were "employers" under the FLSA and NYLL, and employed or jointly employed Plaintiffs and similarly situated employees.

84.     Upon information and belief, throughout the relevant period, the Individual Defendants have had the power to control the operations and compensation practices at Buffalo Wild Wings.

**George E. Banta, Sr.**

85.     Upon information and belief, George E. Banta, Sr. is a resident of the State of New York.

86.     At all relevant times, George E. Banta, Sr. has been the founder and owner of Buffalo Wild Wings.

87.     George E. Banta, Sr. is identified as a principal on the liquor license for BWW MDT, Nine Mall, and BWW ON.

88.     George E. Banta, Sr. is identified as the CEO of Banta Management on the Corporate Filing with the NYS Department of State.

89.     George E. Banta, Sr. has an office at 842 Main Street, Poughkeepsie, New York

12603.

90.     George E. Banta, Sr. has an ownership interest in Banta Management.[7]

91.     At all relevant times, George E. Banta, Sr. has had power over personnel decisions at Buffalo Wild Wings, including the power to hire and fire employees, set their wages, and otherwise control the terms and conditions of their employment.[8]

92.     At all relevant time, George E. Banta, Sr. has had power over payroll decisions at Buffalo Wild Wings, including the power to retain time and/or wage records.

93.     At all relevant times, George E. Banta, Sr. is actively involved in managing the day to day operations of Buffalo Wild Wings.

94.     At all times relevant, George E. Banta, Sr. has also had the power to stop any illegal pay practices that harmed Plaintiffs and similarly situated employees.

95.     At all relevant times, George E. Banta, Sr. has had the power to transfer the assets and/or liabilities of Buffalo Wild Wings.

96.     At all relevant times, George E. Banta, Sr. has had the power to enter into contracts on behalf of Buffalo Wild Wings.

97.     At all relevant time, George E. Banta, Sr. has had the power to close, shut down, and/or sell Buffalo Wild Wings restaurants.

98.     George E. Banta, Sr. is a covered employer within the meaning of the FLSA and NYLL, and at all times relevant, employed and/or jointly employed Plaintiffs and similarly situated employees.

**George E. Banta, Jr.**

99.     Upon information and belief, Defendant George E. Banta, Jr. is a resident of the

---

[7] Ex. A, Banta Dep., at 9:22-25.
[8] *Id.*, at 12:14-20.

State of New York.

100.    George E. Banta, Jr. has identified himself as the Vice President of Banta Management.[9]

101.    At all relevant times, George E. Banta, Jr. has had power over personnel decisions at Buffalo Wild Wings, including the power to hire and fire employees, set their wages, and otherwise control the terms and conditions of their employment.[10]

102.    At all relevant time, George E. Banta, Jr. has had power over payroll decisions at Buffalo Wild Wings, including the power to retain time and/or wage records.

103.    At all relevant times, George E. Banta, Jr. is actively involved in managing the day to day operations of Buffalo Wild Wings.

104.    George E. Banta, Jr. has testified that he "own[s] and operate[s] restaurants and hotels."[11]

105.    At all times relevant, George E. Banta, Jr. has also had the power to stop any illegal pay practices that harmed Plaintiffs and similarly situated employees.

106.    At all relevant times, George E. Banta, Jr. has had the power to transfer the assets and/or liabilities of Buffalo Wild Wings.

107.    At all relevant times, George E. Banta, Jr. has had the power to enter into contracts on behalf of Buffalo Wild Wings.

108.    At all relevant time, George E. Banta, Jr. has had the power to close, shut down, and/or sell Buffalo Wild Wings dealerships.

109.    George E. Banta, Jr. is a covered employer within the meaning of the FLSA and NYLL, and at all times relevant, employed and/or jointly employed Plaintiffs and similarly

---

[9] *Id.* at 6:13-20.
[10] Ex. B, Declaration of George E. Banta Jr.
[11] Ex. A, Banta Dep., at 6:13-20.

situated employees.

## JURISDICTION AND VENUE

110.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1332 and 1337, and jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

111.    This Court also has jurisdiction over Plaintiffs' claims under the FLSA pursuant to 29 U.S.C. § 216(b).

112.    Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(b)(1) because Defendants' nucleus of operations are in the district.

## COLLECTIVE ACTION ALLEGATIONS

113.    Plaintiffs  bring the First and Second Causes of Action, FLSA claims, on behalf of themselves and all similarly situated current and former tipped workers employed at Buffalo Wild Wings restaurants owned, operated, and/or controlled by Defendants who elect to opt-in to this action (the "FLSA Collective Members") between October 3, 2013 and the present.[12]

114.    Defendants are liable under the FLSA for, *inter alia*, failing to properly compensate Plaintiffs and the FLSA Collective.

115.    Consistent with Defendants' policy and pattern or practice, Plaintiffs and the FLSA Collective were not paid the full minimum wage rate for all hours worked up to 40 per workweek and premium overtime compensation for all hours worked beyond 40 per workweek.

116.    All of the work that Plaintiffs and the FLSA Collective have performed has been assigned by Defendants, and/or Defendants have been aware of all of the work that Plaintiffs and the FLSA Collective have performed.

---

[12] The period covered by the FLSA Collective is extended due to a pre-litigation tolling agreement entered into by the parties on July 28, 2016 and terminated April 9, 2018. Ex. C, Tolling Agreement.

117.    As part of their regular business practice, Defendants have intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA with respect to Plaintiffs and the FLSA Collective.

## NEW YORK CLASS ACTION ALLEGATIONS

118.    Plaintiffs bring the Third, Fourth, Fifth, Sixth, Seventh, and Eighth Causes of Action, NYLL claims, pursuant to Rule 23, on behalf of themselves and a class of persons consisting of:

> All persons who work or have worked as tipped workers and similar employees at the Buffalo Wild Wings restaurants in New York operated by Defendants between October 3, 2010[13] and the date of final judgment in this matter (the "NY Rule 23 Class").

119.    The Rule 23 Class Members are so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court.

120.    There are more than fifty Rule 23 Class Members.

121.    Plaintiffs' claims are typical of those claims that could be alleged by any Rule 23 Class Member, and the relief sought is typical of the relief which would be sought by each Rule 23 Class Member in separate actions.

122.    Plaintiffs and the Rule 23 Class Members have all been injured in that they have been uncompensated or under-compensated due to Defendants' common policies, practices, and patterns of conduct.  Defendants' corporate-wide policies and practices affected all Rule 23 Class Members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each of the Rule 23 Class Members.

123.    Plaintiffs are able to fairly and adequately protect the interests of the Rule 23 Class Members and have no interests antagonistic to the Rule 23 Class Members.

---

[13] *Id.*

124.    Plaintiffs are represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented many plaintiffs and classes in wage and hour cases.

125.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants.  Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender.

126.    Common questions of law and fact exist as to the Rule 23 Class that predominate over any questions only affecting Plaintiffs and the Rule 23 Class Members individually and include, but are not limited to, the following:

> (a)  whether Defendants failed to pay Plaintiffs and the Rule 23 Class full minimum wages for all of the hours they worked up to 40 hours per workweek;
>
> (b)  whether Defendants correctly compensated Plaintiffs and the Rule 23 Class at time and one half the full minimum wage for hours worked in excess of 40 per workweek;
>
> (c)  whether Defendants failed to pay Plaintiffs and the Rule 23 Class call-in pay as required by the NYLL;
>
> (d)  whether Defendants failed to pay Plaintiffs and the Rule 23 Class spread-of-hours as required by the NYLL;
>
> (e)  whether Defendants failed to furnish Plaintiffs and the Rule 23 Class with proper annual wage notices, as required by the NYLL; and
>
> (f)  whether Defendants failed to furnish Plaintiffs and the Rule 23 Class with accurate statements with every payment of wages, as required by the NYLL.

## PLAINTIFFS' FACTUAL ALLEGATIONS

127.    Consistent with their policies and patterns or practices as described herein,

Defendants harmed Plaintiffs, individually, as follows:

**Patrick Imbarrato**

128.    During his employment, Imbarrato generally works the following scheduled hours

unless he misses time for vacation, sick days, or holidays:

- Approximately 5 to 6 shifts per week, lasting from approximately 5 p.m. or 6 p.m. until 12 a.m. through 3 a.m. On occasion, Imbarrato worked up to approximately 42.25 hours in a workweek. For example, on May 6, 2016, Plaintiff's paystub reflected 2.52 hours of overtime.

129.    Throughout his employment, Defendants applied a tip credit towards the

minimum wage rate paid to Imbarrato for work performed as a server. Defendants failed to notify

Imbarrato of the tip credit provisions of the FLSA or NYLL.

130.    Defendants have suffered or permitted Imbarrato to perform non-tip producing

side work for more than 20% and/or 2 hours on a consistent basis, including pre-shift side work,

running side work, and closing side work.  These duties included, but are not limited to:  (1)

cleaning out sinks; (2) washing dishes; (3) portioning sauces into 3 oz containers; (4) breaking

down the beverage station and cleaning it thoroughly; (5) rolling large amounts of silverware; (6)

cleaning and breaking down the expeditor's line; (7) sweeping; (8) cleaning the POS station; (9)

washing walls; (10) rotating stock / condiments; and (11) stocking napkins, cups, wet naps,

condiments, and paper boats.

131.    When Imbarrato worked over 40 hours in a workweek, Defendants failed to

calculate his overtime rate at 1.5 times the full minimum wage rate.

132.     Defendants did not pay Imbarrato spread-of-hours pay for all of the times that he worked 10 hours or more in a workday.

133.     Defendants did not provide Imbarrato with call-in pay as required by the NYLL when he worked less than 3 hours in a shift.

134.     Defendants failed to furnish Imbarrato with proper annual wage notices, as required by the NYLL.

135.     Defendants failed to furnish Imbarrato with proper wage statements, listing the rates paid, gross wages, and the claimed tip allowance, as required by the NYLL.

**Nick Parino**

136.     Throughout his employment, Defendants applied a tip credit towards the minimum wage rate paid to Parino for work performed as a server and host. Defendants failed to notify Parino of the tip credit provisions of the FLSA and NYLL.

137.     Defendants have suffered or permitted Parino to perform non-tip producing side work for more than 20% and/or 2 hours on a consistent basis, including pre-shift side work, running side work, and closing side work.  These duties included, but are not limited to:  (1) cleaning out sinks; (2) washing dishes; (3) portioning sauces into 3 oz containers; (4) breaking down the beverage station and cleaning it thoroughly; (5) rolling large amounts of silverware; (6) cleaning and breaking down the expeditor's line; (7) sweeping; (8) cleaning the POS station; (9) washing walls; (10) rotating stock / condiments; and (11) stocking napkins, cups, wet naps, condiments, and paper boats.

138.     Defendants did not pay Parino spread-of-hours pay for all of the times that he worked 10 hours or more in a workday.

139.    Defendants did not provide Parino with call-in pay as required by the NYLL when he worked less than 3 hours in a shift.

140.    Defendants failed to furnish Parino with proper annual wage notices, as required by the NYLL.

141.    Defendants failed to furnish Parino with proper wage statements, listing the rates paid, gross wages, and the claimed tip allowance, as required by the NYLL.

<u>**FIRST CAUSE OF ACTION**</u>
**Fair Labor Standards Act – Minimum Wages**
**(Brought on behalf of Plaintiffs and the FLSA Collective)**

142.    Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

143.    At all times relevant, Plaintiffs and the FLSA Collective were employed by an entity engaged in commerce and/or the production or sale of goods for commerce within the meaning of 29 U.S.C. §§ 201 *et seq.*, and/or they were engaged in commerce and/or the production or sale of goods for commerce within the meaning of 29 U.S.C. §§ 201 *et seq.*

144.    Defendants were not eligible to avail themselves of the federal tipped minimum wage rate under the FLSA, 29 U.S.C. §§ 201 *et seq.*, because Defendants failed to inform Plaintiffs and FLSA Collective Members of the provisions of subsection 203(m) of the FLSA.

145.    Defendants have not been eligible to avail themselves of the federal tipped minimum wage rate under the FLSA, 29 U.S.C. §§ 201 *et seq.*, because Defendants required Plaintiffs and the FLSA Collective to perform duties that are unrelated to their tip-producing work.  During these periods, Defendants have compensated Plaintiffs and the FLSA Collective at the tipped minimum wage rate rather than the full hourly minimum wage rate as required by 29 U.S.C. §§ 201 *et seq.*

- 19 -

146.    Defendants have not been eligible to avail themselves of the federal tipped minimum wage rate under the FLSA, 29 U.S.C. §§ 201 *et seq.*, because Defendants required Plaintiffs and the FLSA Collective to perform a substantial amount of non-tip producing "side work" in excess of 20% of their time at work.   During these periods, Defendants have compensated Plaintiffs and the FLSA Collective at the tipped minimum wage rather than the full hourly minimum wage rate as required by 29 U.S.C. §§ 201 *et seq.*

147.    As a result of Defendants' willful violations of the FLSA, Plaintiff and the FLSA Collective have suffered damages by being denied minimum wages in accordance with the FLSA in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages, attorneys' fees and costs, and other compensation pursuant to 29 U.S.C. §§ 201 *et seq.*

### SECOND CAUSE OF ACTION
**Fair Labor Standards Act – Overtime Wages**
**(Brought on behalf of Plaintiff Imbarrato and the FLSA Collective)**

148.    Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

149.    The overtime wage provisions set forth in the FLSA, 29 U.S.C. §§ 201 *et seq.*, and the supporting federal regulations, apply to Defendants and protect Plaintiff and the FLSA Collective.

150.    Defendants failed to pay Plaintiff and the FLSA Collective the premium overtime wages to which they were entitled under the FLSA – at a rate of 1.5 times the full minimum wage rate – for all hours worked beyond 40 per workweek.

151.    As a result of Defendants' willful violations of the FLSA, Plaintiff and the FLSA Collective have suffered damages by being denied overtime compensation in amounts to be

determined at trial, and are entitled to recovery of such amounts, liquidated damages, attorneys' fees and costs, and other compensation pursuant to 29 U.S.C. §§ 201 *et seq.*

**THIRD CAUSE OF ACTION**
**New York Labor Law – Minimum Wage**
**(Brought on behalf of Plaintiffs and the NY Rule 23 Class)**

152.    Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

153.    At all times relevant, Plaintiffs and the Rule 23 Class have been employees of Defendants, and Defendants have been employers of Plaintiffs and the Rule 23 Class within the meaning of the NYLL §§ 650 *et seq.*, and the supporting New York State Department of Labor Regulations.

154.    Defendants have failed to pay Plaintiffs and the Rule 23 Class the minimum hourly wages to which they are entitled under the NYLL and the supporting New York State Department of Labor Regulations.

155.    Pursuant to the NYLL, Article 19, §§ 650 *et seq.*, and the supporting New York State Department of Labor Regulations, Defendants have been required to pay Plaintiff and the Rule 23 Class the full minimum wage at a rate of (a) $7.25 per hour for all hours worked from July 28, 2010 through December 30, 2013; (b) $8.00 per hour for all hours worked from December 31, 2013 through December 30, 2014; (c) $8.75 per hour for all hours worked from December 31, 2014 through December 30, 2015; and (d) $9.00 per hour for all hours worked from December 31, 2015 through December 30, 2016; (e) $9.70 per hour for all hours worked from December 31, 2016 through December 30, 2017; and (f) $10.40 per hour for all hours worked from December 31, 2017 through the present.

156.    Prior to January 1, 2011, Defendants failed to furnish with every payment of wages to Plaintiffs and the members of the NY Rule 23 Class a statement listing hours worked,

rates paid, gross wages, and tip allowance claimed as part of their minimum hourly wage rate, as required by the NYLL and the supporting New York State Department of Labor Regulations.  As a result, Plaintiffs and the members of the NY Rule 23 Class were entitled to the full minimum wage rate rather than the reduced tipped minimum wage rate during this time period.

157.    Since January 1, 2011, Defendants have failed to notify Plaintiffs and the Rule 23 Class of the tip credit in writing as required by the NYLL and the supporting New York State Department of Labor Regulations.

158.    Defendants also required Plaintiffs and the Rule 23 Class to perform a substantial amount of non-tipped "side work" in excess of 2 hours or more, or 20% of their work time. During these periods, Plaintiffs and the Rule 23 Class were engaged in a non-tipped occupation.

159.    Due to Defendants' violations of the NYLL, Plaintiffs and the Rule 23 Class are entitled to recover from Defendants their unpaid minimum wages, liquidated damages as provided for by the NYLL, reasonable attorneys' fees and costs, and pre-judgment and post-judgment interest.

**FOURTH CAUSE OF ACTION**
**New York Labor Law – Unpaid Overtime**
**(Brought on behalf of Plaintiff Imbarrato and the NY Rule 23 Class)**

160.    Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

161.    The overtime wage provisions of Article 19 of the NYLL and its supporting regulations apply to Defendants, and protect Plaintiffs and the Rule 23 Class.

162.    Defendants failed to pay Plaintiffs and the Rule 23 Class the premium overtime wages to which they were entitled under the NYLL and the supporting New York State Department of Labor Regulations – at a rate of 1.5 times the full minimum wage rate – for all

hours worked beyond 40 per workweek.

163.   Due to Defendants' violations of the NYLL, Plaintiffs and the Rule 23 Class are entitled to recover from Defendants their unpaid overtime wages, liquidated damages as provided for by the NYLL, reasonable attorneys' fees and costs of the action, and pre-judgment and post-judgment interest.

**FIFTH CAUSE OF ACTION**
**New York Labor Law– Call-in Pay Violation**
**(Brought on behalf of Plaintiffs and the members of the NY Rule 23 Class)**

164.   Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

165.   During regularly scheduled shifts, Plaintiffs and the members of the Rule 23 Class who reported for duty, whether or not assigned to actual work, were permitted to leave by request or permission of Defendants, and were not compensated for: (1) at least three hours for one shift or the number of hours in the regularly scheduled shift, whichever is less; (2) at least six hours for two shifts totaling six hours or less, or the number of hours in the regularly scheduled shift, whichever is less; and (3) at least eight hours for three shifts totaling eight hours or less or the number of hours in the regularly scheduled shift, whichever is less, as required by 12 N.Y.C.R.R. Part 137 and Part 146.

166.   Due to Defendants' violations of the NYLL, Plaintiffs and the members of the Rule 23 Class are entitled to recover from Defendants up to three hours of wages calculated at their regular or overtime rate of pay, whichever is applicable, as provided for by 12 N.Y.C.R.R. Part 137 and Part 146, liquidated damages as provided for by the NYLL, reasonable attorneys' fees, costs, and pre-judgment and post-judgment interest.

## SIXTH CAUSE OF ACTION
### New York Labor Law – Spread-of-Hours Pay
### (Brought on behalf of Plaintiffs and the NY Rule 23 Class)

167.    Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

168.    Defendants have failed to pay Plaintiffs and the members of the NY Rule 23 Class additional compensation of one hour's pay at the basic minimum hourly wage rate for each day that the length of the interval between the beginning and end of their workday – including working time plus time off for meals plus intervals off duty – was greater than 10 hours.

169.    Due to Defendants' violations of the NYLL, Plaintiffs and the members of the Rule 23 Class are entitled to recover from Defendants their unpaid spread-of-hours wages, liquidated damages as provided for by the NYLL, reasonable attorneys' fees, costs, and pre-judgment and post-judgment interest.

## SIXTH CAUSE OF ACTION
### New York Labor Law – Failure to Provide Proper Annual Wage Notices
### (Brought on behalf of Plaintiffs and the Rule 23 Class)

170.    Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

171.    Defendants have failed to furnish Plaintiffs and the Rule 23 Class with proper annual wage notices as required by NYLL, Article 6, § 195(1), in English or in the language identified by each employee as their primary language, at the time of hiring, and on or before February first of each subsequent year of the employee's employment with the employer, a notice containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer in accordance with NYLL, Article 6, § 191; the name of the employer; any "doing business as"

names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer; plus such other information as the commissioner deems material and necessary.

172.    Due to Defendants' violations of NYLL, Article 6, § 195(1), Plaintiffs and the Rule 23 Class are entitled to statutory penalties of fifty dollars each workday that Defendants failed to provide Plaintiffs and the Rule 23 Class with annual wage notices, or a total of five thousand dollars each, and reasonable attorneys' fees and costs, as provided for by NYLL, Article 6, § 198(1-b).

## EIGHTH CAUSE OF ACTION
### New York Labor Law – Failure to Provide Accurate Wage Statements
### (Brought on behalf of Plaintiffs and the Rule 23 Class)

173.    Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

174.    Defendants failed to supply Plaintiffs and the Rule 23 Class with an accurate statement of wages with every payment of wages as required by NYLL, Article 6, § 195(3), listing:  dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; hourly rate or rates of pay and overtime rate or rates of pay if applicable; the number of hours worked, including overtime hours worked if applicable; deductions; and net wages.

175.    Due to Defendants' violations of NYLL, Article 6, § 195(3), Plaintiffs and the Rule 23 Class are entitled to statutory penalties of two hundred fifty dollars for each workday that Defendants failed to provide them with accurate wage statements, or a total of five thousand dollars each, and reasonable attorneys' fees and costs, as provided for by NYLL, Article 6, § 198

(1-d).

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs, individually, and on behalf of all other similarly situated persons, respectfully requests that this Court grant the following relief:

A.     That, at the earliest possible time, Plaintiffs be allowed to give notice of this collective action, or that the Court issue such notice, to all tipped workers who are presently, or have at any time during the three years from October 3, 2010, up through and including the date of this Court's issuance of court-supervised notice, worked at the Buffalo Wild Wings restaurants in New York.  Such notice shall inform them that this civil action has been filed, of the nature of the action, and of their right to join this lawsuit if they believe they were denied proper wages;

B.     Unpaid minimum wages, unpaid overtime compensation and an additional and equal amount as liquidated damages pursuant to the FLSA and the supporting United States Department of Labor Regulations;

C.     Certification of this case as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure;

D.     Designation of Plaintiffs as representatives of the Rule 23 Class and counsel of record as Class Counsel;

E.     Unpaid minimum wages, unpaid overtime compensation, spread-of-hours pay, call-in pay and liquidated damages permitted by law pursuant to the NYLL and the supporting New York State Department of Labor Regulations;

F.     Statutory penalties of fifty dollars for each workday that Defendants failed to provide Plaintiffs and the Rule 23 Class with proper annual wage notices, or a total of five thousand dollars each, as provided for by NYLL, Article 6 § 198;

G.     Statutory penalties of two hundred fifty dollars for each workday that Defendants

failed to provide Plaintiffs and the Rule 23 Class with accurate wage statements, or a total of five

thousand dollars each, as provided for by NYLL, Article 6 § 198;

        H.      Prejudgment and post-judgment interest;

        I.       Reasonable attorneys' fees and costs of the action; and

        J.      Such other relief as this Court shall deem just and proper.

Dated:      New York, New York
             June 15, 2018

Respectfully submitted,

/s/ Brian S. Schaffer
Brian S. Schaffer

**FITAPELLI & SCHAFFER, LLP**
Brian S. Schaffer
Frank J. Mazzaferro
28 Liberty Street
New York, NY 10005
Telephone: (212) 300-0375

**WERMAN SALAS P.C.**
Douglas M. Werman, *pro hac vice forthcoming*
77 W. Washington, Suite 1402
Chicago, IL 60602
(312) 419-1008

*Attorneys for Plaintiffs and*
*the Putative Classes*