UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SONY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 3/20/2020

---

PATRICK IMBARRATO and NICK PRAINO, on
behalf of themselves and all others similarly situated,

Plaintiffs,

-against-

BANTA MANAGEMENT SERVICES, INC.,
BANTA BWW MDT, LLC, BANTA BWW ON,
LLC, BANTA NINE MALL, LLC, BANTA BWW
NB, LLC, GEORGE BANTA, SR., and GEORGE
BANTA, JR.,

Defendants.

No. 18-cv-5422 (NSR)
OPINION & ORDER

---

NELSON S. ROMÁN, United States District Judge

Plaintiffs Patrick Imbarrato and Nick Praino[1] bring this action against Banta Management

Services, Inc. ("Banta Management"), Banta BWW MDT, LLC ("Banta Middletown"), Banta

BWW ON, LLC ("Banta Oneonta"), Banta Nine Mall, LLC ("Banta Wappingers Falls"), Banta

BWW NB, LLC ("Banta Poughkeepsie," and together with Banta Management, Banta

Middletown, Banta Oneonta, and Banta Wappingers Falls," Corporate Defendants"), George

Banta, Sr., and George Banta, Jr., asserting claims under the Fair Labor Standards Act ("FLSA")

and the New York Labor Law ("NYLL"). (ECF No. 1.) Before the Court is Defendants 'motion

to partially dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF

No. 33.) Plaintiffs oppose the motion. (ECF No. 35.) For the following reasons, Defendants '

motion is GRANTED IN PART and DENIED IN PART.

---

[1] Plaintiff Praino is referred to interchangeably as "Praino," "Priano," and "Parino" at various intervals in
the Complaint. The Court refers to him as "Praino," as listed in the caption of the Complaint.

# BACKGROUND[2]

Defendant Banta Management is a family-run real estate development and management company based in Poughkeepsie, New York.  (Compl. ¶ 2.)  Buffalo Wild Wings ("BWW") is a casual dining restaurant and sports bar franchise with locations across the United States and other countries.  (*Id.* ¶ 3.)  Banta Management owns and operates three BWW franchises in the state of New York: one in Middletown, one in Wappingers Falls, and one in Oneonta.  (*Id.*)

Plaintiffs are former servers at the BWW in Middletown.  (*Id.* ¶¶ 21, 27.)  Plaintiff Imbarrato worked at the Middletown BWW from in or around August 2013 through February 8, 2018.  (*Id.* ¶ 21.)  Plaintiff Praino worked at the Middletown BWW from in or around May 2013 through November 2013 and from in or around December 2014 through February 2015.  (*Id.* ¶ 27.)  Plaintiffs bring this action on behalf of themselves and other similarly situated tipped employees who worked at BWW restaurants owned by Defendants[3] from October 3, 2013, through the present.[4]  (*Id.* ¶ 113.)

Plaintiffs allege that Defendants failed to provide them with proper minimum wages and overtime wages under federal and state law.  Throughout Plaintiffs' employment, Defendants applied a tip credit to the minimum wage rate paid to Plaintiffs.  (*Id.* ¶¶ 129, 136.)  However, Plaintiffs performed non-tip-producing  side-work for more than 20% of the time worked and/or two hours on a consistent basis, including pre-shift side-work, running side-work, and closing side-work.  (*Id.* ¶¶ 130, 137.)  Defendants did not notify Plaintiffs of the tip credit provisions of the FLSA or NYLL.  (*Id.*  ¶¶ 129, 136.)  Furthermore, Defendants failed to pay Plaintiff

---

[2] The facts in this section are taken from Plaintiffs' Complaint, (ECF No. 1), unless otherwise specified.
[3] Plaintiffs' NYLL claims are brought on behalf of a class of tipped employees who have worked at BWW restaurants owned by Defendants within the State of New York.  (Compl. ¶ 118.)
[4] The limitations period for Plaintiffs' claims was extended based on a pre-litigation tolling agreement entered into by the parties that tolled the statute of limitations on Plaintiffs' FLSA and NYLL claims between July 28, 2016, and and April 9, 2018.  (*Id.* ¶ 113 n.12., Ex. C.)

Imbarrato overtime wages when he worked over 40 hours per week, and failed to pay either Plaintiff spread-of-hours pay or call-in pay as required by the NYLL. (*Id. ¶¶* 132–33, 138–39.) Defendants also failed to furnish Plaintiffs with proper wage notices and wage statements listing rates paid, gross wages, and tip allowance, as required by the NYLL. (*Id.* ¶¶ 134–35, 140–41.)

In addition to suing Corporate Defendants, Plaintiffs seek to hold George Banta, Sr. ("Banta Sr."), the founder and owner of BWW, and his son George Banta, Jr. ("Banta Jr."), the Vice President of Banta Management, individually liable for violations of the FLSA and NYLL. (*Id.* ¶¶ 86, 100.) Plaintiffs allege that Corporate Defendants, Banta Sr., and Banta Jr. jointly employed Plaintiffs and are Plaintiffs' employers under the FLSA and NYLL. (*Id.* ¶¶ 32–35.) Plaintiffs also seek to hold the top ten shareholders of Banta Management jointly and severally liable for unpaid wages pursuant to New York Business Corporation Law ("NY BCL") § 630, and the top ten members of the remaining Corporate Defendants jointly and severally liable for unpaid wages pursuant to New York Limited Liability Company Law ("NY LLCL") § 609. (*Id.* ¶¶ 44, 53, 62, 71, 80.)

Defendants now move to partially dismiss the Complaint. (*See* Defs. Mem. in Support of Mot. to Dimiss ("Defs. Mot.") (ECF No. 34).) Specifically, Banta Sr. and Banta Jr. move to dismiss all claims against them, and all Defendants move to dismiss Plaintiffs' NYLL claims arising from Defendants' failure to provide Plaintiffs with proper wage notices and statements. Defendants also move to dismiss Plaintiffs' claims under NY BCL § 630 and NY LLCL § 609.

## LEGAL STANDARD

Under Rule 12(b)(6), the inquiry is whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007));

*accord Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id*. at 679. To survive a motion to dismiss, a complaint must supply "factual allegations sufficient 'to raise a right to relief above the speculative level.'" *ATSI Commc ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). The Court must take all material factual allegations as true and draw reasonable inferences in the non-moving party's favor, but the Court is "'not bound to accept as true a legal conclusion couched as a factual allegation,'" or to credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). In determining whether a complaint states a plausible claim for relief, a district court must consider the context and "draw on its judicial experience and common sense." *Id*. at 662. A claim is facially plausible when the factual content pleaded allows a court "to draw a reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678.

## DISCUSSION

### I.      Liability of Individual Defendants

Banta Sr. and Banta Jr. (together, the "Individual Defendants"), move to dismiss Plaintiffs' FLSA and NYLL claims as against them for failure to state a claim upon which relief can be granted. Specifically, they assert that the Complaint is deficient insofar as it does not adequately allege an employer-employee relationship between the Individual Defendants and Plaintiffs. (Defs. Mot. at 5–9.) The Court disagrees.

The FLSA defines "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). "The Supreme Court has emphasized that is an expansive definition with 'striking breadth.'" *Hart v. Rick's Cabaret*

*Intern., Inc.*, 967 F. Supp. 2d 901, 938–39 (S.D.N.Y. 2013) (quoting *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 326 (1992)). The "overarching concern is whether the alleged employer possessed the power to control the workers in question." *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 139 (2d Cir. 1999) (citation omitted).

In order for an individual defendant to be an employer, there must be more than just "[e]vidence that [the] individual is an owner or officer of a company, or otherwise makes corporate decisions that have nothing to do with an employee's function. . . . Instead, to be an 'employer,' an individual defendant must possess control over a company's actual 'operations' in a manner that relates to a plaintiff's employment." *Irizarry v. Catsimatidis*, 722 F.3d 99, 109 (2d Cir. 2013). "[T]he determination of whether an employer-employee relationship exists for purposes of the FLSA should be grounded in economic reality rather than technical concepts." *Id.* at 104 (citation and internal quotation marks omitted).

To determine whether an individual defendant is an employer under the FLSA, courts must apply the Second Circuit's four-factor test to determine the "economic reality" of the employment relationship, which considers whether the alleged employer "(1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Carter v. Dutchess Community College*, 735 F.2d 8, 12 (2d Cir. 1984) (quoting *Bonnette v. Calif. Health & Welfare Agency*, 704 F.2d 1465, 1470 (9th Cir. 1983)). These factors are intended to be "nonexclusive and overlapping," and are to be applied in a manner that ensures that the economic reality test is "sufficiently comprehensive and flexible to give proper effect to the broad language of the FLSA." *Irizarry*, 722 F.3d at 105 (citation and internal quotation marks omitted). "No one of the four factors standing alone is dispositive. . . .

Instead, the 'economic reality' test encompasses the totality of circumstances, no one of which is exclusive." *Herman*, 172 F.3d at 139 (citing *Brock v. Superior Care, Inc.*, 840 F.2d 1054, 1059 (2d Cir. 1988)). Notwithstanding the flexibility of the economic reality test, however, a plaintiff must do more than recite the language of the test to plausibly allege that an individual defendant qualifies as an employer. *See Bravo v. Established Burger One LLC*, No. 12-CV-9044(CM), 2013 WL 5549495, at *7 (S.D.N.Y. Oct. 8, 2013) (collecting cases).

The NYLL's definition of "employer" is "nearly identical" to that of the FLSA, and the analysis of the employment relationship under both statutes is based on the same factors. *See Fermin v. Las Delicias Peruanas Restaurant, Inc.*, 93 F. Supp. 3d 19, 37 (E.D.N.Y. 2015); *Copantitla v. Fiskardo Estiatorio, Inc.*, 788 F. Supp. 2d 253, 308 n. 21 (S.D.N.Y. 2011); *see also Mahoney v. Amekk Corp.*, No. 14-CV-4131, 2016 WL 6585810, at *9 (E.D.N.Y. Sept. 30, 2016) (collecting cases holding that the FLSA and NYLL are interpreted consistently with one another on the question of employer status).

Here, Plaintiffs allege that the Individual Defendants had ownership interests in Corporate Defendants and exerted operational control over Corporate Defendants. They state that the Individual Defendants, *inter alia*, "maintained control over, oversaw, and directed the operation of [BWW], including its employment practices, during the relevant period;" that they "manage and/or operate [BWW];" that they exercised "power over personnel decisions at [BWW], including the power to hire and fire employees [and] set their wages;" that they exercised power over payroll decisions at BWW; and that they were "actively involved in managing the day to day operations of BWW." (Compl. ¶¶ 81–109.) Plaintiffs further allege that Banta Sr. is the founder and owner of BWW, is identified as a principal on the liquor license for BWW Middletown, BWW Oneonta, and BWW Wappingers Falls, and is identified as the

CEO of Banta Management on the company's filing with the New York Department of State. (*Id.* ¶¶ 86–88.) Banta Jr. is the Vice President of Banta Management. (*Id.* ¶ 100.)

Plaintiffs attach to the Complaint a transcript of a deposition given by Banta Jr. in an unrelated litigation. (*Id.* Ex. A.) In the deposition, Banta Jr. describes Banta Management as "family business" that provides "[o]versight and operational guidance" to the hotels and restaurants it owns. (*Id.* at 6:10–7:05.) Later in the deposition, Banta Jr. says it was the decision of himself, Banta Sr., and his mother to promote an employee at one of Banta Management's hotels. (*Id.* 12:14–20.) Plaintiffs also attach an affidavit of Banta Jr. in the same unrelated litigation. (*Id.* Ex. B.) In the affidavit, Banta Jr. describes the termination of an employee at one of Banta Management's hotels. (*Id.*)

Contrary to the Individual Defendants' contentions, the Complaint contains more than "mere boilerplate allegations" that the Individual Defendants meet the various prongs of the economic reality test. Although Plaintiffs include a number of admittedly formulaic statements mirroring the language of the economic reality test, Plaintiffs supplement those statements with factual allegations related to the nature and degree of the Individual Defendants' operational control over the terms and conditions of their employment. Plaintiffs identify the Individual Defendants as stakeholders and decision-makers in Banta Management, which owns and operates BWW restaurants. They point to Banta Jr.'s own testimony that Banta Management provides "oversight and operational guidance" to the restaurants they own. Plaintiffs essentially contend that the operational guidance provided by Banta Management leadership, consisting of the Banta family, extends to employment practices at BWW, as detailed in the Complaint. Plaintiffs also suggest that the fact that the Individual Defendants admittedly made an employment decision with respect to an employee at one of the hotels owned by Banta

Management renders it plausible that they had the power to do the same at BWW, another business in Banta Management's portfolio.

These factual allegations are more robust than the conclusory allegations described in cases cited by the Individual Defendants, in which various district courts found that plaintiffs failed to plausibly allege an employer-employee relationship with one or more of the defendants. *See, e.g.*, *Coley v. Vannguard Urban Imp. Ass'n, Inc.*, No. 12-CV-5565(PKC), 2014 WL 479825, at *4–*6 (E.D.N.Y. 2014) (plaintiff alleged that defendant was a board member, coupled with boilerplate allegations); *Bravo*, 2013 WL 5549495 at *6 (plaintiffs recited elements of economic reality test and alleged that defendants were "Principals" of the corporate defendants); *Tracy v. NVR, Inc.*, 667 F. Supp. 2d 244, 246–47 (W.D.N.Y. 2009) (amended complaint contained only boilerplate allegations and stated that defendant was human resources officer). Moreover, numerous other district courts have found that plaintiffs alleging fewer facts than Plaintiffs nonetheless satisfied their pleading burden on a motion to dismiss. *See, e.g.*, *Marasco v. Am. Expediting Co., Inc.*, No. 16-CV-232(PKC), 2018 WL 2074154, at *2 (E.D.N.Y. Jan. 12, 2018) (allegations mirroring the elements of the economic reality test were nonetheless sufficient to plausibly allege that defendant, who was president of the company that directly employed plaintiff, was the plaintiff's employer; such allegations were "comparable to other pleadings that have been found sufficient to withstand similar motions" (citing cases)); *Winfield v. Babylon Beauty Sch. of Smithtown, Inc.*, 89 F. Supp. 3d 556, 569 (E.D.N.Y. 2015) ("somewhat vague" allegations that individual defendants were owners, officers, and/or directors of corporate defendant responsible for decision not to pay plaintiffs sufficed to state a claim that the individual defendants plaintiffs' employers).

Of course, it is entirely possible that discovery will yield no further evidence of an

employer-employee relationship between Individual Defendants and Plaintiffs.  If that is the case, the Individual Defendants may renew their arguments on a motion for summary judgment, where Plaintiffs must meet an evidentiary burden.  At this early stage in the proceedings, however, Plaintiffs have sufficiently pleaded FLSA and NYLL claims against the Individual Defendants.

## II.    Shareholder and Member Liability

NY BCL § 630 provides that a non-public corporation's ten largest shareholders may be held personally liable for "all debts, wages or salaries due and owing to any of its laborers, servants or employees. . . for services performed by them for such corporation."  NY LLCL § 609(c) likewise provides that the limited liability company members with the ten largest ownership stakes in a company can be held personally liable for the same types of employment claims.  However, in order to invoke either of these provisions, an employee is required to serve the subject shareholders or members with notice of his intent to hold them liable within 180 days of the termination of his services.  *See* N.Y. Bus. Corp. Law § 630(a); N.Y. LLC Law § 609(c).  Moreover, an action to enforce such liability is required to be commenced within 90 days "after an execution unsatisfied" against the corporation or limited liability company "upon a judgment recovered against it for such services."  *Id.*

Defendants correctly point out that Plaintiffs have pleaded neither that they served shareholders of Banta Management and members of the remaining Corporate Defendants with timely notice of their intent to invoke the foregoing provisions, nor that they have attempted to execute an unsatisfied judgment against any of the Corporate Defendants.  Plaintiffs do not oppose this characterization of the Complaint.  Accordingly, to the extent Plaintiffs seek to hold the Individual Defendants liable under NY BCL § 630 or NY LLCL § 609(c), rather than as

Plaintiffs' employers under the FLSA and NYLL, Plaintiffs' claims are dismissed.

## III.    Wage Theft Prevention Act Claims

Defendants move to dismiss Plaintiffs' claims alleging that they failed to provide annual

wage notices and accurate wage statements to Plaintiffs, as required under New York Labor Law

§§ 195(1)(a) and 195(3).  Defendants principally argue that because Plaintiffs have not alleged

that they suffered a concrete injury as a result of Defendants' alleged violations, Plaintiffs lack

Article III standing to sue pursuant to the Supreme Court's holding in *Spokeo, Inc. v. Robins*, 136

S. Ct. 1540 (2016).  Defendants also aver that, independent of Plaintiffs' purported lack of

standing, Plaintiffs' wage notice claims must be dismissed because the referenced requirements

are no longer in effect.  The Court addresses each of these arguments in turn.

### a.    Article III Standing

The Supreme Court has called the doctrine of standing "perhaps the most important" of

the case-or-controversy doctrines placing limits on federal judicial power as it derives directly

from the Constitution.  *Allen v. Wright*, 468 U.S. 737, 750 (1984).  The doctrine requires a

plaintiff to have a "personal stake," in the outcome of the action.  *Summers v. Earth Island

Institute*, 555 U.S. 488, 493 (2009).  That is, a plaintiff must allege a "personal injury fairly

traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the

requested relief."  *Allen*, 468 U.S. at 751.

"[T]he ' irreducible constitutional minimum' of standing consists of three elements[:]

[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged

conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision."

*Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (quoting *Lujan v. Defs. of Wildlife*, 504

U.S. 555, 560–61 (1992), and citing *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC),*

*Inc.*, 528 U.S. 167, 180–81 (2000)). The party seeking to invoke federal jurisdiction has the burden of establishing each element. *See Spokeo*, 136 S. Ct. at 1547; *Ali v. N.Y. City Envtl. Control Bd.*, No. 14-CV-00312 (SLT)(CLP), 2015 WL 728163, at *3 (E.D.N.Y. Nov. 16, 2015). On a motion to dismiss, "the plaintiff has no evidentiary burden" and "[t]he task of the district court is to determine whether the [p]leading 'allege[s] facts that affirmatively and plausibly suggest that [the plaintiff] has standing to sue.'" *Am. Bird Conservancy v. Harvey*, No. 16-cv-1582 (ADS)(AKT), 2017 WL 477968, at *7 (E.D.N.Y. Feb. 6, 2017) (citing *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56 (2d Cir. 2016)) (quoting *Amidax Trading Grp. v. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011)); *Ali*, 2015 WL 7281633, at * 4.

Here, Defendants challenge Plaintiffs' standing on the grounds that Plaintiffs do not allege the first element of Article III standing: an injury-in-fact. "[T]he injury-in-fact requirement requires a plaintiff to allege an injury that is both 'concrete and particularized.'" *Spokeo*, 136 S. Ct. at 1545 (quoting *Friends of the Earth*, 528 U.S. at 180–81). Concreteness refers to the "realness" of the injury, meaning that the injury "must actually exist" and cannot be "abstract." *Id.* at 1548. The particularity requirement means that an injury "must affect the plaintiff in a personal and individual way." *Id.*

Defendants' arguments are addressed to the concreteness requirement. In that regard, Defendants invoke *Spokeo*, in which the Supreme Court ruled that a plaintiff cannot "allege a bare [statutory] procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III." *Id.* at 1549. In *Spokeo*, the plaintiff had sued for violation of various notice provisions of the Fair Credit Reporting Act ("FCRA"), as well as the statutory requirement that credit reporting agencies establish "reasonable procedures to assure maximum possible accuracy of" consumer reports. *Id.* at 1545 (quoting 15 U.S.C. § 1681e(b)). these

violations allegedly resulted in the publication of inaccurate information about the plaintiff.  *Id.*  Because the appellate court had failed to consider whether the plaintiff suffered a concrete harm, the Supreme Court remanded the case for a full consideration of the injury-in-fact requirement.  *Id.* at 1548, 1550.  The Court further held that a mere allegation that the defendant violated a procedural requirement of the FCRA, which would not necessary result in harm, was insufficient to satisfy that requirement.  *Id.* at 1550.

However, the Court cautioned that "concrete" is "not necessarily synonymous with 'tangible.'"  *Id.* at 1549.  To be sure, "although tangible injuries are perhaps easier to recognize," the Supreme Court has confirmed in numerous cases that "intangible injuries can nevertheless be concrete."  *Id.*  (citing P*leasant Grove City v. Summum*, 555 U.S. 460 (2009) (free speech); *Church of Lukumi Babalu Aye, Inc. v. Hialeah*, 508 U.S. 520 (1993) (free exercise)).  The Court further elaborated, "In determining whether an intangible harm constitutes injury in fact, both history and the judgment of Congress play important roles."  *Id.* at 1549.  Thus, "it is instructive to consider whether an alleged intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts," as well as whether Congress has elected to elevate an intangible harm to the status of a statutorily cognizable injury.  *Id.*

Importantly, "Congress' role in identifying and elevating intangible harms does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right."  *Id.*; *see Summers*, 555 U.S.  at 496 ("[D]eprivation of a procedural right without some concrete interest that is affected by the deprivation . . . is insufficient to create Article III standing").  A plaintiff must still allege a concrete harm.  Nonetheless, "the violation of a procedural right

granted by statute can be sufficient in some circumstances to constitute injury in fact. In other words, a plaintiff in such a case need not allege any additional harm beyond the one Congress has identified." *Id.* at 1549–50 (citing *Federal Election Comm'n v. Akins*, 524 U.S. 11, 20–25 (1998) (confirming that a group of voters' "inability to obtain information" that Congress had decided to make public is a sufficient injury-in-fact to satisfy Article III); *Public Citizen v. Dep't of Justice*, 491 U.S. 440, 449 (1989) (holding that two advocacy organizations' failure to obtain information subject to disclosure under the Federal Advisory Committee Act "constitutes a sufficiently distinct injury to provide standing to sue")).

The Second Circuit has confirmed that *Spokeo* does not categorically preclude "violations of statutorily mandated procedures from qualifying as concrete injuries supporting standing." *Strubel v. Comenity Bank*, 842 F.3d 181, 189 (2d Cir. 2016). Rather, "to determine whether a procedural violation manifests injury in fact, a court properly considers whether Congress conferred the procedural right in order to protect an individual's concrete interests." *Id.* Thus, a plaintiff asserting a claim based on the violation of a procedural right suffers a concrete injury only if he demonstrates both (1) a connection between the procedural right and a concrete interest and (2) that "a violation of the procedure may demonstrate a sufficient 'risk of real harm' to the underlying interest." *Id.* (quoting *Spokeo*, 136 S. Ct. at 1549).

The distinction between a bare procedural violation and a procedural violation that confers Article III standing may be more fully understood in its application. In *Spokeo*, the Supreme Court observed Congress enacted the FCRA to curb the dissemination of false information. However, a procedural violation of the FCRA with respect to the required notice to

users of disseminated information did not necessarily demonstrate concrete injury[5] because the disseminated "information regardless may be entirely accurate" or the misinformation may be too trivial to "cause harm or present any material risk of harm." *Spokeo*, 136 S. Ct. at 1550. By way of example, the Supreme Court highlighted a hypothetical FCRA violation wherein an incorrect zip code was disseminated. The Court found it "difficult to imagine how the dissemination of an incorrect zip code, without more, could work any concrete harm." *Id.*

In *Strubel*, the Second Circuit similarly reasoned that certain alleged violations of the Truth in Lending Act ("TILA") did not constitute injuries in fact under the circumstances presented. For instance, the plaintiff alleged a violation of the TILA's requirement that a creditor disclose a consumer's obligation to provide a creditor with timely notice to stop automatic payment of a disputed charge. *Strubel*, 842 F.3d at 191–92. After identifying the concrete interest protected by the TILA provisions at issue as the consumer's interest in avoiding the uninformed use of credit, the Second Circuit nonetheless found that the plaintiff had not pleaded any material risk of harm to that interest. *Id.* at 190, 192. In reaching this conclusion, the Second Circuit relied on the undisputed fact that the defendant did not even offer an automatic payment plan at the time the plaintiff held the credit card at issue. *Id.* at 191–92.

Conversely, the Second Circuit found that the plaintiff's disclosure challenges pertaining to the required notice that (1) certain identified consumer rights pertain only to disputed credit card purchases not yet paid in full, and (2) a consumer dissatisfied with a credit card purchase must contact the creditor in writing or electronically, did satisfy the injury-in-fact requirement. *Id.* at 190. The Court concluded that each of these notice requirements serves to protect a

---

[5] On remand, the Ninth Circuit found that the plaintiff in *Spokeo* did allege a concrete injury because he alleged the dissemination of misinformation regarding material aspects of his life, which could be deemed a real harm. *See Robins v. Spokeo, Inc.*, 867 F.3d 1108 (9th Cir. 2017), *cert. denied*, *Spokeo, Inc. v. Robins*, 138 S. Ct. 931 (2018).

consumer's concrete interest in avoiding the uninformed use of credit by "requiring a creditor to notify a consumer, at the time he opens a credit account, of how the consumer's own actions can affect his rights with respect to credit transactions." *Id.* The Court further emphasized that "[a] consumer who is not given notice of his obligations is likely not to satisfy them and, thereby, unwittingly to lose the very credit rights that the law affords him." *Id.* For that reason, the TILA violations alleged by the plaintiff gave rise to a "risk of real harm" to the consumer's concrete interest in the informed use of credit. *Id.* No other harm needed to be alleged in order to demonstrate a concrete injury for Article III standing purposes. *Id.* at 191.

Here, Plaintiffs allege that Defendants failed to furnish them with proper wage notices and statements, as required by NYLL §§ 195(1) and 195(3). These provisions were enacted as part of New York's Wage Theft Prevention Act ("WTPA"), N.Y. Lab. Law § 195, which sought "to expand the rights of employees to seek civil and criminal avenues of remedy for their employers failing to follow labor law appropriately and the specifications therein." N.Y. Spons. Mem., 2010 S.B. 8380. More specifically, the New York State Assembly passed the WTPA to address studies showing that a large number of employees were not being paid the wages owed to them, and that many employers were not adequately informing their employees of their wages and how they are calculated in language the employees could understand. *Id.* The New York State Assembly opined that existing penalties did not adequately deter employers from paying less than the wages owed, and stated that the WTPA would dramatically change this by increasing penalties for violating employees' rights. *Id.*

The specific notice provisions invoked by Plaintiffs require Defendants to give their employees (1) a notice at the time of hiring[6] "in writing in English and in the language identified

---

[6] As discussed below, the additional requirement that a written notice containing the information described be provided to employees annually was removed from the NYLL following a 2014 amendment to the WTPA.

by each employee as the primary language of such employee" containing specific information, including, *inter alia*, the rate of pay and basis thereof, the method of payment, allowances claimed as part of the minimum wage, the regular pay day, and the identity of the employer; and (2) statements with every payment of wages listing specific information, including, *inter alia*, the dates of work covered by that payment of wages, the name, address and phone number of employer, rate of pay and basis thereof, gross wages, deductions, any allowances claimed as part of the minimum wage, and net wage. N.Y. Lab. Law §§ 195(1), 195(3). If employers do not provide the requisite notices to their employees, their employees are entitled to recovery statutory damages in a civil action. *Id.* §§ 198(1-b), 198(1-d).

It is clear that the WTPA was enacted to further protect an employee's concrete interest in being paid what he or she is owed under the NYLL. The statute explicitly recognizes that this interest is put at risk when employees are "mis- or un-informed regarding their rights and the responsibilities of their employers," and seeks to guard against that harm by requiring employers to regularly apprise their employees of such information as the rate and basis for their wages and any allowances claimed by the employer. *Hicks v. T.L. Cannon Management Corp.*, No. 13-CV-6455(EAW), 2018 WL 2440732, at *5 (W.D.N.Y. Mar. 13, 2018).

Defendants' assertion that Plaintiffs "have not demonstrated that the alleged failure to distribute statements and notices could result in potential harm to the interests protected by" the WTPA, (Defs.' Mem. in Further Supp. of Mot. to Dismiss ("Defs.' Reply") (ECR No. 36) at 10), is without merit. Unlike the hypothetical litigant in the example provided by the Supreme Court in *Spokeo*, Plaintiffs do not allege that Defendants violated the WTPA by doing something as trivial as listing an incorrect zip code on a pay stub. Rather, Plaintiffs claim that they were deprived of wage notices and pay stubs complying with the WTPA in *any* manner. (Compl. ¶¶

170–75.)  Like the plaintiffs in *Strubel*, Plaintiffs identify procedural deficiencies that entail a

concrete risk of harm to an interest identified by the legislature.[7]

Defendants dismiss the importance of these notices in protecting Plaintiffs' interest in

ensuring proper pay.  But there is a reason why the New York legislature concluded that enacting

wage notice provisions would "far better protect workers' rights and interests" than existing

penalties.  *See* N.Y. Spons. Mem., 2010 S.B. 8380.  Written notices function as a means of

apprising employees of their rights and of their employer's obligations towards them,

empowering employees to advocate for themselves.  Deprivation of such notices necessarily

entails a significant risk of harm to the employees' concrete interest in being properly paid.

For this reason, the Court finds that Plaintiffs have pleaded a concrete injury.  Moreover,

Plaintiffs sue to vindicate interests particular to them—specifically, access to disclosures

regarding their wage rights—as persons alleging deprivation of adequate wages consistent with

the NYLL.  *See Strubel*, 842 F.3d at 191.  Because Plaintiffs assert a concrete and particularized

injury arising from Defendants' failure to provide them with wage notices and pay stubs pursuant

to the WTPA, the Court rejects Defendants' challenging to Plaintiff's standing to bring such

claims.

### b. Applicability of N.Y. Lab. Law § 195(1)

Defendants move to dismiss Plaintiffs' WTPA claims on the independent basis that

certain portions of the WTPA are no longer in effect.  (Defs. Mot. at 11–12.)  Specifically, the

---

[7] The parties have made supplemental submissions with regard to a recent Second Circuit opinion in a case captioned *Melito v. Experian Marketing Solutions, Inc.*, 923 F.3d 85 (2d Cir. 2019).  (ECF Nos. 37, 38.)  In *Melito*, the Second Circuit found that plaintiffs asserting they received unsolicited text messages in violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C.§ 227, alleged an injury-in-fact because the receipt of unwanted advertisements was itself the harm identified by Congress in enacting the TCPA.  In contrast, the WTPA provides procedural protections against the harm of being insufficiently compensated for labor under the NYLL.  Therefore, the "risk of harm" analysis described in *Strubel* is better suited to addressing the injury-in-fact analysis in this matter.  *See Melito*, 923 F.3d at 93–94 (distinguishing the TCPA violation from cases such as *Strubel* which concern "the *risk* of harms attendant a statutory violation").

requirement that employers provide wage notices as described in NYLL § 195(1) was modified in 2014. *See Cabrera v. 1560 Chirp Corp.*, No. 15-CV-8194, 2017 WL 1289349, at *6–*7 (S.D.N.Y. Mar. 6, 2017). From the date of the provision's original enactment on April 9, 2011, through the effective date of the 2014 amendment, employers were obligated to provide written wage notices both at the time of hire and "on or before February first of each subsequent year of the employee's employment with the employer." N.Y. Lab. Law § 195(1-a) (eff. Apr. 9, 2011 to Dec. 29, 2014). The 2014 amendment removed the annual wage notice requirement, although a wage notice remains required at the time of hire. 2014 N.Y. Laws ch. 537 § 1, *amending* N.Y. Lab. Law § 195(1-a). Additionally, the 2014 Amendment increased the damages to which employees are entitled when their employers fail to provide the requisite wage notices. *Id.*; *see Cabrera v. Canela*, 412 F. Supp. 3d 167, 185 (S.D.N.Y. 2019).

The parties agree that the annual wage notice requirement is no longer in effect, and that Plaintiffs are not entitled to damages for Defendants' failure to provide annual wage notices after the effective date of the 2014 amendment. (*See* Pl.'s Mem. in Opp. to Defs.' Mot. to Dismiss ("Pl.'s Opp.") (ECF No. 35) at 12–13.) Further, Plaintiffs are not entitled to damages for such failure even prior to the amendment, as the WTPA did not provide for damages for annual wage notice violations during the time that the annual notice requirement was in effect. *See Cabrera*, 412 F. Supp. at 185 (citing cases); *Remache v. Mac Hudson Grp.*, No. 14-CV-3118, 2018 WL 4573072, at *17 (E.D.N.Y. Sept. 7, 2018) ("I agree with those courts that have held that no damages are available for annual wage notice violations, as the text of the statute is contrary to such a result.... Even though the Act, prior to the 2015 amendments, required annual wage notices, it did not provide that employees could recover civil damages for a violation of this requirement; only the New York Department of Labor could pursue such remedies.").

Thus, Plaintiffs' claim for damages based on Defendants' failure to provide annual wage statements is dismissed.

## CONCLUSION

For the foregoing reasons, Defendants' motion to partially dismiss the Complaint is GRANTED to the extent that (1) Plaintiffs' claim to hold the Individual Defendants liable pursuant to NY BCL § 630 or NY LLCL § 609(c) is dismissed and (2) Plaintiffs' claim seeking damages for Defendants' failure to provide annual written wage notices pursuant to a prior version of § 195(a) of the NYLL is dismissed. Defendants' motion is otherwise DENIED. Defendants are directed to file their answer by April 20, 2020. The parties are directed to confer, complete and submit a Case Discovery Plan and Scheduling Order (blank form attached hereto) by May 1, 2020. The Clerk of the Court is respectfully directed to terminate the motion at ECF No. 33.

Dated:   March 2̣9 2020                      SO ORDERED:
          White Plains, New York

                                                NELSON S. ROMÁN
                                  United States District Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Rev. Jan. 2012

-------------------------------------------------------------x

                                                    **CIVIL CASE DISCOVERY PLAN**
                        Plaintiff(s),               **AND SCHEDULING ORDER**

   - against -

                        Defendant(s).      _____ CV _____ (NSR)

-------------------------------------------------------------x

This Civil Case Discovery Plan and Scheduling Order is adopted, after consultation with counsel, pursuant to Fed. R. Civ. P. 16 and 26(f):

1. All parties [consent] [do not consent] to conducting all further proceedings before a Magistrate Judge, including motions and trial, pursuant to 28 U.S.C. § 636(c). The parties are free to withhold consent without adverse substantive consequences. (If all parties consent, the remaining paragraphs of this form need not be completed.)

2. This case [is] [is not] to be tried to a jury.

3. Joinder of additional parties must be accomplished by _____.

4. Amended pleadings may be filed until _____.

5. Interrogatories shall be served no later than _____, and responses thereto shall be served within thirty (30) days thereafter. The provisions of Local Civil Rule 33.3 [shall] [shall not] apply to this case.

6. First request for production of documents, if any, shall be served no later than _____.

7. Non-expert depositions shall be completed by _____.

   a. Unless counsel agree otherwise or the Court so orders, depositions shall not be held until all parties have responded to any first requests for production of documents.

   b. Depositions shall proceed concurrently.

   c. Whenever possible, unless counsel agree otherwise or the Court so orders, non-party depositions shall follow party depositions.

8. Any further interrogatories, including expert interrogatories, shall be served no later than _____.

9.    Requests to Admit, if any, shall be served no later than _____.

10.   Expert reports shall be served no later than _____.

11.   Rebuttal expert reports shall be served no later than _____.

12.   Expert depositions shall be completed by _____.

13.   Additional provisions agreed upon by counsel are attached hereto and made a part hereof.

14.   **ALL DISCOVERY SHALL BE COMPLETED BY** _____.

15.   Any motions shall be filed in accordance with the Court's Individual Practices.

16.   This Civil Case Discovery Plan and Scheduling Order may not be changed without leave of Court (or the assigned Magistrate Judge acting under a specific order of reference).

17.   The Magistrate Judge assigned to this case is the Hon. _____.

18.   If, after entry of this Order, the parties consent to trial before a Magistrate Judge, the Magistrate Judge will schedule a date certain for trial and will, if necessary, amend this Order consistent therewith.

19.   The next case management conference is scheduled for _____, at _____. (The Court will set this date at the initial conference.)


SO ORDERED.

Dated:   White Plains, New York

     _____

                                    _____
                                    Nelson S. Román, U.S. District Judge