UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PATRICK IMBARRATO and NICK PRIANO, individually on behalf of himself and all others similarly situated,<br><br>Plaintiffs,<br><br>-against-<br><br>BANTA MANAGEMENT SERVICES, INC., BANTA BWW MDT, LLC, BANTA NINE MALL, LLC, GEORGE BANTA, SR., and GEORGE BANTA, JR.,<br><br>Defendants. | Case No. 7:18-cv-05422 |

**MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY CERTIFICATION PURSUANT TO THE FAIR LABOR STANDARDS ACT, FOR COURT-AUTHORIZED NOTICE TO SIMILARLY SITUATED PERSONS, AND EXPEDITED DISCOVERY**

## **TABLE OF CONTENTS**

Table of Contents…………………………………………………………………………..i

Table of Authorities………………………………………………………………………ii-vi

I.      INTRODUCTION………………………………………………………………...1

II.     STATEMENT OF FACTS……………………………………………………..…3

      A.  Tipped Employees Are Hired, Managed, and Trained Independently at
         Each Buffalo Wild Wings Location…………………………………...……3

      B.  Side-Work Tasks Vary By Location, Position and Shift…………………………3

III.    ARGUMENT…………………………………………………………………...5

      A.  Defendants Have Not Violated the Tip-Credit or 80/20 Rule…………………5

      B.  The Legal Standard……………………………………………………..…7

      C.  The Requirements for a Collective Action Have Not Been Established………...10

      D.  The Cases Cited by Plaintiff Are Distinguishable and Inapposite………………16

      E.  If this Court were to Certify an FLSA Collective, it Should Not Approve the
         Class Notice and Consent Form or Plaintiffs' Notice Plan……………………...17

         1.  A Two-Year Notice Period Is Appropriate………………………………17

         2.   Plaintiffs' Proposed Notice is Incorrect, Inappropriate and Prejudicial…18

         3.  Only Last Known Mailing Addresses Should Be Provided………….…20

         4.  Banta Should Not Be Required To Post The Notice And Consent Form..21

         5.  Equitable Tolling Is Not Appropriate In This Case……………….…..22

V.      CONCLUSION……………………………………………………………..…22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adonias v. Al Horno Lean Mexican Kitchen, Inc.*,
 No. 16-CV-07266-LTS-KHP,
 2018 U.S. Dist. LEXIS 142894 (S.D.N.Y. Aug. 22, 2018) ...................................................... 5

*Ali v. New York City Health and Hospitals Corp.*,
 No. 11 Civ. 6393,
 2013 U.S. Dist. LEXIS 44091 (S.D.N.Y. Mar. 27, 2013) ...................................................... 13

*Anglada v. Linens 'N Things, Inc.*,
 No. 06 Civ. 12901 (CM),
 2007 U.S. Dist. LEXIS 39105 (S.D.N.Y. April 26, 2007) ...................................................... 18

*Auer v. Robbins*,
 519 U. S. 452 (1997) ...................................................................................................................... 6

*Barfield v. N.Y.C. Health and Hosp. Corp.*,
 No. 05-CV-6319,
 2005 U.S. Dist. LEXIS 28884 (S.D.N.Y. Nov. 18, 2005) ................................................... 8, 13

*A.Q.C. ex rel. Castillo v. U.S.*,
 656 F.3d 135 (2d Cir. 2011) ........................................................................................................ 22

*Chhab v. Darden Rests., Inc.*,
 11-CV-8345 (NRB),
 2013 U.S. Dist. LEXIS 135926 (S.D.N.Y. Sept. 20, 2013) ...................................................... 5

*Delijanin v. Wolfgang's Steakhouse, Inc.*,
 No. 18-cv-7854 (RA) (KHP),
 2019 U.S. Dist. LEXIS 67948 (S.D.N.Y. Apr. 22, 2019) .................................... 12, 14, 15, 22

*Diaz v. Elects. Boutique of Am., Inc.*,
 No. 04-CV-0840E(Sr),
 2005 U.S. Dist. LEXIS 30382 (W.D.N.Y. Oct. 17, 2005) ........................................................ 8

*Dong Yuan v. & Hair Lounge Inc.*,
 No. 18-CV-11905 (AT) (BCM),
 2019 U.S. Dist. LEXIS 230330, at *22-23 (S.D.N.Y. Nov. 7, 2019) ……………………19, 22

*Doucoure v. Matlyn Food, Inc.*,
 554 F. Supp. 2d 369 (E.D.N.Y. 2008) ...................................................................................... 18

*Eng-Hatcher v. Sprint Nextel Corp.*,
No. 07 Civ. 7350 (BSJ),
2009 U.S. Dist. LEXIS 127262 (S.D.N.Y. Nov. 13, 2009) ................................................... 15

*Fast v. Applebee's Int'l, Inc.*,
243 F.R.D. 360 (W. D. Mo. 2007) ................................................................................. 16, 17

*Fengler v. Crouse Health Found.*, Inc.,
595 F. Supp. 2d 189, 198 (N.D.N.Y. 2009)……………………………………...……………..20

*Flood v. Carlson Restaurants, Inc.*,
14 civ 2740 (AT),
2015 U.S. Dist. LEXIS 6608 (S.D.N.Y. Jan. 20, 2015) ......................................................... 16

*Flood v. Carlson Restaurants, Inc.*,
94 F. Supp. 3d 572 ............................................................................................................... 16

*Flores v. Osaka Health Spa, Inc.*,
No. 05 Civ. 962,
2006 U.S. Dist. LEXIS 11378 (S.D.N.Y. Mar. 16, 2006) ...................................................... 13

*Gamero v. Koodo Sushi Corp.*,
272 F. Supp. 3d 481 (S.D.N.Y. 2017) .................................................................................... 5

*Garcia v. Spectrum of Creations, Inc.*,
102 F. Supp. 3d 541 (S.D.N.Y. 2015) ................................................................................... 21

*Gilliam v. Starjet Rest. Corp.*,
No. 10 Civ 6056 (JSR),
2011 U.S. Dist. LEXIS 115833 (S.D.N.Y. Oct. 4, 2011) ........................................................ 8

*Gonzalez v. Scalinatella, Inc.*,
No. 13-CIV-3629 (PKC),
2013 U.S. Dist. LEXIS 168540 (S.D.N.Y. Nov. 25, 2013) ................................................... 21

*Gordon v. Kaleida Health*,
No. 08-CV- 378S,
2009 U.S. Dist. LEXIS 95729 (W.D.N.Y. Oct. 14, 2009) ..................................................... 20

*Guillen v. Marshalls of MA, Inc.*,
750 F. Supp. 2d 469 (S.D.N.Y. 2010) .................................................................................... 7

*Guzelgurgenli v. Prime Time Specials*, Inc.,
883 F. Supp. 2d 340 (E.D.N.Y. 2012)……………………………………………………………22

*Hamadou v. Hess Corp.*,
915 F. Supp. 2d 651 (S.D.N.Y. 2013) ................................................................................. 5, 9

*Hernandez v. Immortal Rise*, Inc.,
   No. 11 Civ. 4360,
   2012 U.S. Dist. LEXIS 136556, at *20 (E.D.N.Y. Sept. 24, 2012)……………………………18

*Hintergerger v. Catholic Health Sys.*,
   No. 08-CV-380S,
   2009 U.S. Dist. LEXIS 97944 (W.D.N.Y. Oct. 21, 2009)……………………………………20, 21

*Hoffmann-La Roche, Inc. v. Sperling*,
   493 U.S. 165 (1989)……………………………………………………………………………7

*Khan v. Airport Mgmt. Servs.*,
   No. 10-CIV-7735 (NRB),
   2011 U.S. Dist. LEXIS 133134 (S.D.N.Y. Nov. 16, 2011)……………………………………7

*Laroque v. Domino's Pizza, LLC*,
   557 F. Supp. 2d 346 (E.D.N.Y. 2008) ………………………………………………………15

*Levinson v. Primedia, Inc.*,
   No. 02 Civ. 2222 (CBM),
   2003 U.S. Dist. LEXIS 20010 (S.D.N.Y. Nov. 6, 2003)……………………………………8, 13

*Lijun Geng v. Shu Han Ju Rest. II Corp.*,
   No. 18-cv-12220 (PAE) (RWL),
   2019 U.S. Dist. LEXIS 154246 (S.D.N.Y. Sep. 6, 2019)……………………………………5

*Linares Huarcaya v. Mukasey*,
   550 F.3d 224 (2d Cir. 2008)……………………………………………………………………6

*Llanos-Fernandez v. Mukasey*,
   535 F.3d 79 (2d Cir. 2008)……………………………………………………………………6

*Michael v. Bloomberg L.P.*,
   No. 14-cv-2657(TPG),
   2015 U.S. Dist. LEXIS 51030 (S.D.N.Y., Apr. 17, 2015)……………………………………21

*Mohamed v. Sophie's Cuban Cuisine Inc.*,
   No. 14-CV-3099 (TPG),
   2015 U.S. Dist. LEXIS 126012 (S.D.N.Y. Sept. 21, 2015)……………………………………20, 21

*Morales v. Plantworks, Inc.*,
   No. 05 Civ. 2349 (DC),
   2006 U.S. Dist. LEXIS 4267 (S.D.N.Y. Feb. 1, 2006)……………………………………7, 8

*Moses v. Griffin Indus., LLC*,
   No. 18-cv-1200 (ALC) (OTW),
   2020 U.S. Dist. LEXIS 181017 (S.D.N.Y. Sep. 30, 2020)……………………………………22

*Myers v. Hertz Corp.*,
  624 F.3d 537 (2d Cir. 2010)........................................................................7

*Park v. FDM Grp. Inc.*,
  No. 16-CV-01520 (LTS)(SN),
  2019 U.S. Dist. LEXIS 86309 (S.D.N.Y. May 22, 2019).....................................21

*Reyes v. Nidaja, LLC*,
  No. 14 Civ. 9812,
  2015 U.S. Dist. LEXIS 101728 (S.D.N.Y. July 31, 2015) .....................8, 12, 13, 15

*Ritz v. Mike Rory Corp.*,
  No. 12 Civ. 367,
  2013 U.S. Dist. LEXIS 61634 (E.D.N.Y. Apr. 30, 2013) ...................................17

*Rudd v. T.L. Cannon Corp.*,
  No 3:10-cv-0591,
  2022 U.S. Dist. LEXIS 21061 (N.D.N.Y. Jan. 4, 2011)........................................7

*Salinas v. Starjem Restaurant Corp.*,
  123 F. Supp. 3d 442. (S.D.N.Y. 2015)...........................................................5

*Saloman v. Adderley Indus.*,
  847 F. Supp. 2d 561 (S.D.N.Y. 2012).........................................................20

*Sanchez v. JMP Ventures, L.L.C.*,
  No. 13 Civ. 7264,
  2014 U.S. Dist. LEXIS 14980 (S.D.N.Y. Jan. 27, 2014)......................................15

*Sanchez v. Salsa Con Fuego, Inc.*,
  No. 16CV473RJSBCM,
  2016 U.S. Dist. LEXIS 118315 (S.D.N.Y. Aug. 24, 2016)...................................12

*Scholtisek v. Eldre Corp.*,
  229 F.R.D. 381 (W.D.N.Y. 2005)................................................................8

*Sharma v. Burberry Ltd.*,
  52 F. Supp. 3d 443 (E.D.N.Y. 2014) ...........................................................20

*Swales v. KLLM Transp. Servs., LLC*,
  985 F.3d 430 (5th Cir. 2021) ................................................................9, 10

*Vasquez v. Vitamin Shoppe Indus. Inc.*,
  No. 10-CIV-8820 (LTS)(THK),
  2011 U.S. Dist. LEXIS 74376 (S.D.N.Y. Jul. 11, 2011) ......................................7

*Vasto v. Credico (USA) LLC*,
   No. 15-cv-9298 (PAE),
   2016 U.S. Dist. LEXIS 60158 (S.D.N.Y. May 5, 2016)........................................................22

*Whitehorn v. Wolfgang's Steakhouse, Inc.*,
   767 F. Supp. 2d 445 (S.D.N.Y. 2011)..............................................................................18, 19

**Statutes**

29 U.S.C. § 203(t) ........................................................................................................................5

29 U.S.C. § 255(a) .......................................................................................................................17

Fair Labor Standards Act……………………………………...1, 5, 7, 9, 12, 13, 14, 16, 17, 18, 22

FLSA 2018-27, 2018 .....................................................................................................................6

FLSA § 216(b) ..............................................................................................................................9

New York Labor Law ...................................................................................................................13

Defendants Banta Management Services, Inc., Banta BWW MDT, LLC, Banta Nine Mall, LLC, Banta BWW ON, LLC, Banta BWW NB, LLC, George Banta, Sr., and George Banta, Jr. (together "Defendants") respectfully submit this response in opposition to Plaintiff's motion for certification of Fair Labor Standards Act ("FLSA") collective action and authorization of notice ("Motion").

## I.   INTRODUCTION

Banta Management Services, Inc. ("Banta") is a real estate development and management company specializing in lodging and dining properties. Buffalo Wild Wings ("BWW") is a casual dining restaurant and sports bar franchise with approximately 600 locations throughout the United States. Banta Management owns and operates three Buffalo Wild Wings franchises in New York, one in Middletown (Banta BWW MDT, LLC), one in Wappingers Falls, (Banta BWW Nine Mall, LLC) and one in Oneonta (Banta BWW ON, LLC). (Compl. ¶ 3).

Plaintiffs allege that Defendants violated the FLSA by violating the tip-credit provision and failing to pay tipped employees at the minimum wage for excessive amounts of non-tipped work and they now seek to certify their case as a collective case under the FLSA.  Plaintiffs premise their Motion on two notions: (1) Defendants purportedly have a common policy across all of its Buffalo Wild Wings locations to deny tipped employees minimum wage and overtime compensation; and (2) Plaintiffs are similarly situated to all tipped employees at all of the Buffalo Wild Wings locations owned by Defendants.  Neither contention is true.

First, Plaintiffs have not, because they cannot, demonstrate that Defendants have a common plan or policy that violates the law.  Plaintiffs rely on depositions of Individual Defendant George Banta, Jr. from a completely separate and unrelated action that did not involve the Buffalo Wild Wings restaurants.  Such statements provide no support for the contention that Defendants

1

maintained a common policy across its restaurants to deny tipped employees minimum wage. Motion at 3.  Further, vague statements in Plaintiffs' Declarations that they received some non-descript documents outlining policies for all locations do not provide any support for their allegations.  Motion at 4;  Declaration of Ashley Korycki ("Korycki Dec.") ¶ 13; Declaration of Krystal Boughen ("Boughen Decl.") ¶ 13; Declaration of Nicholas Azierski ("Azierski Dec.") ¶ 13; Declaration of Patrick Imbarrato ("Imbarrato Dec.") ¶ 13.  These indefinite, unsupported statements fall far short of meeting the required showing that Defendants engaged in a common policy that violated the law.

Second, Plaintiffs have failed to show that they are similarly situated to the class that they propose.  Plaintiffs provide nothing more than boilerplate declarations and names of employees that have also worked at Defendants' restaurants. *See, e.g.,* Boughen Decl. ¶10, 14; Korycki Decl. ¶10; Azierski Decl. ¶10; Imbarrato Decl. ¶10, 14.  Simply listing other employees does not show that these few people were similarly situated to the Plaintiffs, let alone the entire proposed class. Moreover, as demonstrated in the Declaration of Keith VanTassel, Director of Operations for the Buffalo Wild Wings restaurants, side-work tasks varied by location, by whether an employee worked as a server or bartender, by timing of the shift worked, and by whether the employee was designated as an "opener" or "closer" for any particular shift worked.  *See* Declaration of Keith VanTassel ("VanTassel Decl.") ¶¶ 7-11, 14-18, attached hereto as Ex. A to the Declaration of Jason P. Sultzer ("Sultzer Decl.").  Plaintiffs' declarations, in a transparent attempt to make the side-work appear more voluminous and time consuming, simply list a myriad of tasks they performed while at work but did not make clear that only a small portion of those tasks would have been required for any given shift.  Id. ¶ 19.  For these reasons and all the reasons set forth below, Plaintiffs' Motion must be denied.

II.    STATEMENT OF FACTS

### A. Tipped Employees Are Hired, Managed, and Trained Independently at Each Buffalo Wild Wings Location

The three Buffalo Wild Wings locations are each owned by separate corporate entities. Compl ¶ 3.  The three Buffalo Wild Wings locations at issue in this action are all individually managed and maintained by the specific management teams at each location.  Each location employs its own general manager who heads up its own management team.  VanTassel Decl. ¶6. All hiring decisions, including the hiring of servers and bartenders, are made separately and independently at each restaurant and employees are hired to work at that particular restaurant. Id. ¶ 7.  Once hired, the servers and bartenders are trained at the location for which they were hired by the team at that location.  Id. ¶ 8.  The training varies based on the particular needs of each location.  Id.

### B. Side-Work Tasks Vary By Location, Position and Shift

As is customary at all restaurants, servers and bartenders are responsible for certain so-called side-work that relates to their positions as servers and bartenders.  Bartenders are only responsible for side-work tasks that relate directly to the bar while servers are responsible for side-work tasks related to their assigned serving station and potentially restaurant wide duties.  Id. ¶ 11. The side-work tasks assigned to servers and bartenders are not consistent across location, position, time of shift, or individual employee assignments.  Id. ¶¶ 7-11, 14-18

First, side-work tasks vary across the three Buffalo Wild Wings locations.  Middletown, for example, has a large patio that seats about forty-two customers.  Id. ¶ 9.  Thus, any side-work that is related to the patio at Middletown will necessarily vary from patio side-work at Wappinger Falls and Oneonta, which only hold about four to six tables each.  Id.  Similarly, the number of sets of rolled silverware each server is required to roll also varies across the three locations as do

the number of beverage stations that must be set up and broken down, the number of booths that require cleaning, the amount of carpeting that needs to vacuumed, and the size of the area that needs to be mopped  Id.  The number of POS stations and number of television sets also vary by location.  Id.  Additionally, the number of servers and bartenders vary by location, thereby varying the number of employees contributing to the side-work tasks that are shared among the staff.  Id. ¶ 10.

Second, side work tasks vary for the morning shift and evening shift.  Only servers on the morning shift would be responsible for setting up the expeditor's line, setting up the beverage station(s) and making coffee and tea.  Id. ¶ 16.  Only the morning bartender would be responsible for cutting fruit.  Only evening shift employees would be responsible for breaking down and cleaning the beverage station(s), breaking down and cleaning expeditor's line, vacuuming, and mopping.  Id.  Moreover, an individual's side-work tasks would vary depending on their station assignment for the shift and whether or not they are a designated "opener" or "closer" for their shift.  Id. ¶¶ 15, 17.  For example, only the server(s) assigned to cover the patio for a particular shift would be responsible for cleaning the patio on that shift.  Id. ¶ 20.  Or, a server would only be responsible for wiping down booth seats if the station they were assigned for that shift contained booths, many stations did not.  Id.  Only "openers" were responsible for setting up the expeditor's line, setting up the beverage station(s), turning on televisions, scooping ice cream, and portioning cakes.  Id. ¶ 17.   Only the "closers" were responsible for breaking down the expeditor's line, breaking down beverage station(s), turning off televisions, scooping ice cream, portioning cakes, and mopping.  Id.  Further, many of the tasks were only completed on an as-needed basis, which was not every shift, including rotating condiments, stocking cups, napkins, wet naps and paper boats, scooping ice cream, and portioning cakes.  Id. ¶ 19.

### III.    ARGUMENT

### A.  Defendants Have Not Violated the Tip-Credit or 80/20 Rule

Plaintiffs spend a large portion of their brief citing to statutes and inapposite case law from various districts inappropriately addressing the FLSA tip-credit rule.  Motion at 6-7.  Their argument is improper with respect to both the underlying case and to the current motion, which concerns only whether Plaintiffs have satisfied their burden of showing they are similarly situated to the proposed class.  *Lijun Geng v. Shu Han Ju Rest. II Corp.*, No. 18-cv-12220 (PAE) (RWL), 2019 U.S. Dist. LEXIS 154246, at *19 (S.D.N.Y. Sep. 6, 2019) ("'In ascertaining whether potential opt-in plaintiffs are similarly situated' at the conditional certification stage, 'courts should not weigh the merits of the underlying claims.'") (quoting *Hamadou v. Hess Corp.*, 915 F. Supp. 2d 651, 662 (S.D.N.Y. 2013)).  Nonetheless, under the FLSA and law in this district, "an employer may 'pay a tipped worker a cash wage that is lower than the statutory minimum wage, provided that the cash wage and the employee's tips, taken together, are at least equivalent to the minimum wage[,]' and '[t]his allowance against the minimum cash wage is known as a 'tip credit.'"  *Adonias v. Al Horno Lean Mexican Kitchen, Inc.*, No. 16-CV-07266-LTS-KHP, 2018 U.S. Dist. LEXIS 142894, at *22-23 (S.D.N.Y. Aug. 22, 2018) (quoting *Gamero v. Koodo Sushi Corp.*, 272 F. Supp. 3d 481, 500 (S.D.N.Y. 2017)); 29 U.S.C. § 203(t); *Salinas v. Starjem Restaurant Corp.*, 123 F. Supp. 3d 442, 467. (S.D.N.Y. 2015).  Traditionally, courts have interpreted the provision to require tipped employees who spend "more than twenty percent of their workweeks, engaged in related but non-tip-producing work must be paid the full minimum wage for the time spent performing the non-tipped work." *Chhab v. Darden Rests., Inc.*, 11-CV-8345 (NRB), 2013 U.S. Dist. LEXIS 135926, at *3 (S.D.N.Y. Sept. 20, 2013).

Although not an appropriate determination at this stage of the litigation, Defendants have not violated the tip-credit or the 80/20 rule because its employees did not and do not engage in non-tip producing side-work for more than twenty percent of their work weeks.  Although not dispositive to this case as Defendants have not violated the 80/20 rule, the current state of the 80/20 rule is in question.   In their moving papers, Plaintiffs sought to preemptively address the elimination of the temporal 80/20 rule as set forth in the November 8, 2018 U.S. Department of Labor ("DOL") Opinion Letter ("Opinion Letter").   U.S. Dep't of Labor, Wage & Hour Div., Opinion Letter FLSA 2018-27, 2018 DOLWH LEXIS 29 (Nov. 8, 2018).   The Opinion Letter eliminates the temporal requirements and instead states that "no limitation shall be placed on the amount of [non-tip-generating] duties that may be performed, whether or not they involve direct customer service, as long as they are performed contemporaneously with the duties involving direct service to customers or for a reasonable time immediately before or after performing such direct services."  *Id.*  Plaintiffs recognize that the Opinion Letter creates a potentially fatal problem for their claims and seek to neutralize its affect in its moving papers.  Motion at 14.  However, Plaintiffs were only able to cite to out of circuit cases which have declined to adopt the reasoning in the Opinion Letter for various reasons not at issue here.   Regardless, guidance from a government agency promulgating the regulation at issue cannot be summarily dismissed.  *See Linares Huarcaya v. Mukasey*, 550 F.3d 224, 229 (2d Cir. 2008) (*Auer* requires that  an "agency's interpretations [of its own regulations] are . . . entitled to deference and are 'controlling unless plainly erroneous or inconsistent with the regulation.'") (quoting *Llanos-Fernandez v. Mukasey*, 535 F.3d 79, 82 (2d Cir. 2008) and *Auer v. Robbins*, 519 U. S. 452, 461 (1997)).

### B.  The Legal Standard

The FLSA does not require that every FLSA lawsuit proceed as a collective action. Instead, district courts "have discretion, *in appropriate cases*," to implement an opt-in process by facilitating notice to potential plaintiffs. *Hoffmann-La Roche, Inc. v. Sperling*, 493 U.S. 165, 169 (1989) (emphasis added); *accord Myers v. Hertz Corp.*, 624 F.3d 537, 554-55 (2d Cir. 2010). Certification of a collective action and authorization of notice are "not automatic" or a rubber stamp but instead require a factual showing "based on some substance." *Guillen v. Marshalls of MA, Inc.*, 750 F. Supp. 2d 469, 480 (S.D.N.Y. 2010) ("*Guillen I*") (finding that the plaintiff's burden may "require only a 'modest factual showing,' ... but the burden is not non- existent and the factual showing, even if modest, must still be based on some substance"); *Vasquez v. Vitamin Shoppe Indus. Inc.*, No. 10-CIV-8820 (LTS)(THK), 2011 U.S. Dist. LEXIS 74376, at *9 (S.D.N.Y. Jul. 11, 2011) (certification "is not automatic"); *see also Khan v. Airport Mgmt. Servs.*, No. 10-CIV-7735 (NRB), 2011 U.S. Dist. LEXIS 133134, at *15 (S.D.N.Y. Nov. 16, 2011) ("While plaintiff's burden at this stage is modest, it is not non-existent. ... In fact, courts in this Circuit have routinely declined to authorize collective action notice when faced with similarly lacking evidence."). Rather, courts "must…take a measured approach when addressing a request for collective action certification, mindful of the potential burden associated with defending against FLSA claim involving large and broadly defined group of plaintiffs." *Rudd v. T.L. Cannon Corp.*, No 3:10-cv-0591, 2022 U.S. Dist. LEXIS 21061, at *17 (N.D.N.Y. Jan. 4, 2011).

At this stage of the litigation, the threshold inquiry is whether the plaintiff has been able to adequately show that the potential class members are "similarly situated" to them. *See Morales v. Plantworks, Inc.*, No. 05 Civ 2349 (DC), 2006 U.S. Dist. LEXIS 4267, at *2 (S.D.N.Y. Feb. 1, 2006). While the burden on the plaintiff may be "modest" conclusory allegations will not be

sufficient to satisfy the requirement. *See Morales*, 2006 U.S. Dist. LEXIS 4267, at *6, 7 ("conclusory allegations" are insufficient because "[t]hough the first stage of class certification only requires a 'modest factual showing,' it must be sufficient to demonstrate that plaintiffs and potential class members were victims of a common scheme or plan that violated the law."); *Reyes v. Nidaja*, LLC,  No. 14 Civ. 9812, 2015 U.S. Dist. LEXIS 101728, at *3 (S.D.N.Y. July 31, 2015) ("A plaintiff must provide some actual evidence of a factual nexus between him and the rest of the class he seeks to represent; conclusory allegations will not suffice.").

Moreover, it is not enough that plaintiffs allege that *they* have been subjected to a policy or practice that *violates* the law; they must demonstrate that *others* have been subjected to this policy or practice. *Id*.; *Scholtisek v. Eldre Corp.*, 229 F.R.D. 381, 387 (W.D.N.Y. 2005). Where plaintiffs have neither identified a policy that violates the law nor demonstrated that the policy or practice was common to others they seek to represent, the case cannot proceed collectively, and must proceed on an individual basis. *See Levinson v. Primedia, Inc.*, No. 02 Civ. 2222 (CBM), 2003 U.S. Dist. LEXIS 20010, *4-5 (S.D.N.Y. Nov. 6, 2003) (denying motion for conditional certification and noting, "[w]hile plaintiffs have provided factual assertions in support of the claim…they have failed to make a sufficient showing that the same was true for other potential plaintiffs."). Where the alleged violation requires individualized factual determinations, class members cannot be "similarly situated." *See Diaz v. Elects. Boutique of Am., Inc*., No. 04-CV-0840E(Sr), 2005 U.S. Dist. LEXIS 30382, *13-15 (W.D.N.Y. Oct. 17, 2005) (finding plaintiffs were not "similarly situated" to those they sought to represent based on the existence of individual inquiries needed to resolve plaintiffs' status); *Gilliam v. Starjet Rest. Corp.*, No. 10 Civ. 6056 (JSR), 2011 U.S. Dist. LEXIS 115833, at *18-19 (S.D.N.Y. Oct. 4, 2011) (same); *Barfield v. N.Y.C. Health and Hosp. Corp.*, No. 05-CV-6319, 2005 U.S. Dist. LEXIS 28884 (S.D.N.Y. Nov.

18, 2005) (denying motion for conditional certification where plaintiff failed to produce evidence demonstrating widespread violation of FLSA) .

Traditionally courts have employed a two-step certification process whereby the court first determines whether the named plaintiffs and potential opt-in plaintiffs are "similarly situated" to allow for notice to potential plaintiffs. *See, e.g., Hamadou*, 915 F. Supp. 2d at 660-611. The second step occurs after discovery, and often upon a motion to decertify, and requires a strict standard for determining if the opt-in plaintiffs are similarly situated enough to proceed to trial as a collective action. *Id.* at 661. However, a recent Fifth Circuit decision has rejected the two-step approach and serves as an indication that courts may be moving away from this ad hoc approach that is not grounded in the FLSA or Supreme Court precedent. *Swales v. KLLM Transp. Servs., LLC*, 985 F.3d 430, 434, 440 (5th Cir. 2021) ("nothing in the FLSA, nor in Supreme Court precedent interpreting it, requires or recommends (or even authorizes) any 'certification' process. The law instead says that the district court's job is ensuring that notice goes out to those who are 'similarly situated,' in a way that scrupulously avoids endorsing the merits of the case."). In *Swales*, noting that "similarly situated" is not defined by § 216(b) of the FLSA, the Fifth Circuit ruled that "a district court must rigorously scrutinize the realm of 'similarly situated' workers, and must do so at the outset of the case, not after a lenient, step one 'conditional certification.' Only then can the district court determine whether the requested opt-in notice will go to those who are actually similar to the named plaintiffs." *Id.* (the two-step approach "has no anchor in the FLSA's text or in Supreme Court precedent interpreting it. Indeed, the word 'certification,' much less 'conditional certification,' appears nowhere in the FLSA"). Instead, *Swales* implements an approach requiring the district courts to "identify, at the outset of the case, what facts and legal considerations will be material to determining whether a group of 'employees' is 'similarly

situated.' And then it should authorize preliminary discovery accordingly…to determine if and when to send notice to potential opt-in plaintiffs." *Id.* at 441.  While courts appear to be moving away from this two-step approach, here, as shown *infra*, Plaintiffs have not met even the traditional "modest" burden of showing that they are similarly situated to the proposed class of employees.

### C. The Requirements for a Collective Action Have Not Been Established

Plaintiffs have produced no showing, let alone a "modest" showing, that they are similarly situated to any other tipped employees at the Middletown restaurant or either of the other two locations.  On this non-existent foundation, they ask the Court to send a notice to hundreds of employees.  Plaintiffs submitted four cookie-cutter declarations of employees, three of which worked only at the Middletown, New York location and one who worked at Middletown, New York and Oneonta, New York locations.  Korycki Decl. ¶ 2; Boughen Decl. ¶ 2; Azierski Decl. ¶ 2; Imbarrato Decl. ¶ 2.  Two of those four employees include vague and conclusory statements stating only that they have worked with employees who have worked at other locations and providing those employees' name and nothing more.  Boughen Decl ¶14 ("I have worked with other tipped employees who have worked at Defendants other Buffalo Wild Wings locations. Specifically, I worked with Albert Corderro (sp), who also worked at the Buffalo Wild Wings located in Wappingers Falls, New York and Oneonta, New York, and Georgia Cote, who also worked at the Buffalo Wild Wings in Oneonta, New York."); Imbarrato Decl. ¶14 ("I have worked with other tipped employees who have worked at Defendants other Buffalo Wild Wings locations. Specifically, I worked with Vinny (l/n/u), who also worked at the Buffalo Wild Wings located in Wappingers Falls, New York.").  That is the extent of the evidence that Plaintiffs submitted supporting their claim that Plaintiffs are similarly situated across all of Defendants restaurants, i.e. two people who knew of three people who worked at the restaurants.  Notably absent are any

10

assertions regarding the time, date or circumstances of their interactions with the other employees. Also absent are any assertions that the Plaintiffs ever had any conversations with the other employees at all, let alone any conversation about wages. These bare bones assertions do not satisfy Plaintiffs' burden no matter how "modest" that burden may be.

On the other hand, Defendants have shown that the side-work tasks Plaintiffs claim make them similarly situated, actually vary greatly among the three locations. See § II.B., *supra*; VanTassel Decl. ¶¶ 9-11. Defendants have also shown that the long list of side-work tasks in Plaintiffs' declarations were not all completed at every shift or by every employee or even at all, in some cases. Ashley Krycki, in her declaration, asserted that she was a bartender at the Middletown location. Korycki Decl. ¶2. However, the majority of the side-work tasks that she listed were not tasks that bartenders were required to do. Indeed, only seven of the eighteen tasks she listed were assigned to bartenders. Van Tassel Decl ¶ 12. Given that she did not have to perform many of the side-work tasks, which is the foundation of Plaintiffs' claims, she cannot be similarly situated to the other employees. The same would be true of all employees who only worked at bartenders.

Based on his extensive experience and observations of the operations at the Buffalo Wild Wings restaurants, Keith VanTassel is intimately aware of how long it takes to complete each side-task. *See* VanTassel Decl. ¶ 21. Given, as Defendants have shown *supra*, that each task is not performed at each shift, that not all tasks that are performed during a shift are performed by all employees, and given the time that it takes, on average, to complete each task, it is beyond reason that an employee could be spending more than 20% of their work week on non-tip producing side-work. If the Plaintiffs were performing non-tip producing side-work for more than 20% of their workweek, as they claim, they were not average workers and not similarly situated to the other

11

employees at their restaurants.  Id.  Their failure to assert any conversations with other employees discussing the amount of side-work or their compensation for it further supports the finding that these Plaintiffs are, at best, outliers.

Furthermore, Plaintiffs have made no showing that there exists a common policy or plan that violates the FLSA.  Again, each of the declarations submitted by Plaintiffs contain the same vague, conclusory statements that they received some non-descript "documentation" containing "terms, conditions, and policies."  Korycki Decl. ¶ 13; Boughen Decl. ¶ 13; Azierski Decl. ¶ 13; Imbarrato Decl. ¶ 13.  That is the only evidence submitted purporting to show that Defendants have *any* common policies among their three restaurants, let alone a policy that *violates* the FLSA as is required to obtain conditional certification.  In stark contrast, Defendants have shown that that the restaurants are each owned by their own corporate entity, each location has its own general manager and management team, each location makes its hiring decisions separately and independently and also trains all of their employees separate and independently.  VanTassel Decl. ¶¶ 6-8.  *Delijanin v. Wolfgang's Steakhouse, Inc.*, No. 18-cv-7854 (RA) (KHP), 2019 U.S. Dist. LEXIS 67948, at *23 (S.D.N.Y. Apr. 22, 2019) (no common policy where "the other [restaurant] locations appear to be separate corporate entities.  Plaintiff has not identified a common manager at all locations who informed him and other to work off-the-clock, and the declarations [] indicate there were different managers at each location"); *Sanchez v. Salsa Con Fuego, Inc.*, No. 16CV473RJSBCM, 2016 U.S. Dist. LEXIS 118315, at *13 (S.D.N.Y. Aug. 24, 2016) ("Even when locations or businesses share common ownership, plaintiffs must allege sufficient facts to support an inference of a common policy across all locations or businesses").

Courts in this district have often denied conditional certification in cases where the plaintiff seeks to rely on such vague and conclusory allegations as the Plaintiffs do here.  *Reyes v. Nidaja,*

*LLC* involved claims the defendant failed to pay overtime compensation to employees as mandated by the FLSA and New York Labor Law.  2015 U.S. Dist. LEXIS 101728, at *1.  The district court denied plaintiff's motion for conditional certification holding that the plaintiff failed to show he was similarly situated to other employees.  *Id.* at *4-5, 7-8.  Specifically, the court held plaintiff's allegation that he had observed other employees who worked for the defendant and also were not compensated for overtime were insufficient to establish he was similarly situated or that a common policy existed.  *Id.* at *4-5. (statement that "'I have observed other employees who did work at [defendant's store] also worked more than forty (40) hours per week, and they too were not paid overtime wages" was insufficient).  The court noted that the plaintiff, like the Plaintiffs here, did not "indicate the time or circumstances surrounding his observations" nor does he state that "he had any conversations with any other employee regarding their treatment, pay, job duties, or responsibilities." *Id.*  at *5.  Several other courts within the district have come to the same conclusion.  *See Ali v. New York City Health and Hospitals Corp.*, No. 11 Civ. 6393, 2013 U.S. Dist. LEXIS 44091, *7-8 (S.D.N.Y. Mar. 27, 2013) (motion for conditional certification denied where the "sole basis" for the plaintiff's belief that others were similarly situated was "conversations with other respiratory therapists," without providing additional information about the conversations or their substance); *Barfield*, 2005 U.S. Dist. LEXIS 28884 at *3 (conditional certification denied where a plaintiff offered "nothing but limited anecdotal hearsay" to support the idea that other nurses were similarly situated); *Levinson*, 2003 U.S. Dist. LEXIS 20010 at *5 (conditional certification denied to plaintiffs who alleged a companywide policy but "fail[ed] to support this legal conclusion with a factual showing that extends beyond their own circumstances."); *Flores v. Osaka Health Spa, Inc.*, No. 05 Civ. 962, 2006 U.S. Dist. LEXIS 11378, at *8 (S.D.N.Y. Mar. 16, 2006) (complaint was factually insufficient for conditional

13

certification where the plaintiff stated that "it is [my] understanding that the other massage therapists working my shift did the same" amount of work, without explaining what that understanding was based on).

*Delijanin v. Wolfgang's Steakhouse, Inc.*, 2019 U.S. Dist. LEXIS 67948 ("*Wolfgang's*") is a recent case from this District that is particularly instructive. In *Wolfgang's*, the plaintiffs sued multiple locations of Wolfgang's Steakhouse for violations of the FLSA including, *inter alia*, failure to pay plaintiff and other tipped employees the minimum wage due to an invalid tip-credit deduction. *Id.* at *2. The court held that plaintiff did not meet his minimal burden to conditionally certify a class of all of the restaurant locations.[1] *Id.* at *20. Indeed, the court held that, much like here, "[p]laintiff's proffer consists only of: (1) conclusory assertions that 'employees were interchangeable between various Wolfgang's locations,' and (2) hearsay conversations with co-workers about their experiences at other Wolfgang's restaurants at unspecified dates." *Id.* at *19-20. Plaintiffs did not claim to have worked at other locations such that they have personally experienced or observed wage violations. *Id.* at *20. Specifically, the *Wolfgang's* court held:

> conclusory hearsay statements are insufficient to provide a factual nexus between Midtown East and other locations. ***All they have provided is a list of 'unsupported assertions and conclusory allegations' that are 'insufficient to conditionally certify a class'***

[1] The court found that the plaintiff did meet the burden for the one location that they worked, but it was based on much more detailed allegations than present here. The Court based its decision on statements in plaintiff's declaration that "he 'frequently talked' to his co-workers at Midtown East 'about Defendant's pay policies before work while working off-the-clock, during breaks, and also after work.'" *Id.* at *18. He also listed employees with whom he worked ***and spoke about wages***. *Id*. at *19. Plaintiff stated that "[e]verybody complained about how unfair it was that Defendants were not paying us properly for all hours we worked. We complained that these couple hours each week [of off-the-clock work] would really start adding up over time but we would never be paid for those hours." and that "[e]veryone also frequently complained about the non-tipped side work that Defendants made us perform." *Id.* The plaintiffs here include no such statements in their declarations. They do not allege that they had any conversations with any other employees at all.

14

*Id.* at \*22 (emphasis added) (citing *Sanchez v. JMP Ventures, L.L.C.,* No. 13 Civ. 7264, 2014 U.S. Dist. LEXIS 14980, at \*5 (S.D.N.Y. Jan. 27, 2014) (finding that information about "where or when these observations or conversations occurred . . . is critical in order for the Court to determine the appropriate scope of the proposed class and notice process"); *Laroque v. Domino's Pizza, LLC,* 557 F. Supp. 2d 346, 356 (E.D.N.Y. 2008) (declining to extend certification where the evidence consisted of "generalized allegations of wrongdoing" and "hearsay statements"); *Eng-Hatcher v. Sprint Nextel Corp.*, No. 07 Civ. 7350 (BSJ), 2009 U.S. Dist. LEXIS 127262, at \*5 (S.D.N.Y. Nov. 13, 2009) (denying conditional and class certification in an "off-the-clock" case where the plaintiff "attempt[ed] to impute her own limited experience" to the class and the plaintiff's evidence failed to justify the size and scope of the proposed class).

Plaintiffs' proffer here is even less substantial than what the *Wolfgang's* court found insufficient, simply listing names, sometimes only a first name, of employees at other locations. They provide no assertions regarding the timing or circumstances of their observations either in Middletown or about any of the employees at other locations.  They do not assert that they ever spoke with any of the other employees about anything let alone about Defendants' wage policies. Such bare assertions are simply insufficient and are the exact type of assertions that *Wolfgang's* and other courts in this district found to be inadequate.  *See Reyes*, 2015 U.S. Dist. LEXIS 101728, at \*7 (there is a "consensus in this district that where a plaintiff bases an assertion of a common policy on observation of coworkers or conversations with them, he must provide a minimum level of detail regarding the contents of those conversations or observations.").

15

### D.  The Cases Cited by Plaintiff Are Distinguishable and Inapposite

The cases Plaintiffs rely on in their Motion are inapposite and do not support conditional certification in this case.  Plaintiffs rely heavily on *Flood v. Carlson Restaurants, Inc.*[2] (Motion at 11) which involved claims for various violations of the FLSA.  14 civ 2740 (AT), 2015 U.S. Dist. LEXIS 6608 (S.D.N.Y. Jan. 20, 2015).  There is a vast difference, however, between the amount and substance of the evidence submitted in *Flood* and that submitted here.  *Id* at *8-12.  In *Flood*, plaintiffs submitted six declarations containing allegations across eight different restaurant locations in four different states along with deposition testimony from the six declarants.  *Id.* at *8, 8 n.5.  The declarants included employees who had worked at two locations and could provide testimony about their personal experiences at the different locations.  *Id.* at *11.  Moreover, in *Flood*, plaintiffs, unlike here, presented substantial evidence of centralized control over individual locations, including excerpts from handbooks and descriptions of uniform training programs.  No such evidence exists here.

Likewise, Plaintiff's reliance on *Fast v. Applebee's Int'l, Inc.*, 243 F.R.D. 360 (W. D. Mo. 2007) is misplaced.[3]  *Fast* is a Western District of Missouri case involving FLSA tip-credit claims.  However, in *Fast*, Plaintiffs submitted evidence of a common policy or plan including a document

---

[2] In their motion, Plaintiffs cite to *Flood v. Carlson Restaurants, Inc.*, 94 F. Supp. 3d 572, however that decision is an order on a motion to transfer and a motion to dismiss.  Defendants believe that Plaintiffs intended to cite to *Flood v. Carlson Restaurants, Inc.*, 14 civ 2740 (AT), 2015 U.S. Dist. LEXIS 6608 (S.D.N.Y. Jan. 20, 2015).  For the purposes of the memorandum, Defendants will assume Plaintiffs intended to cite 2015 U.S. Dist. LEXIS 6608 (S.D.N.Y. Jan. 20, 2015).

[3] Again, Defendants believe that Plaintiffs have cited the wrong decision in the *Fast v. Applebee's Int'l, Inc.* action.  The decision cited by Plaintiffs, 2009 WL 2391921 (W.D. Mo. Aug. 3, 2009) is an order on a *Daubert* motion while 243 F.R.D. 360 (W.D. Mo. 2007) is the court's decision on conditional certification.  For the purposes of this memorandum, Defendants will assume Plaintiffs intended to cite 243 F.R.D. 360.

entitled "Labor Management Best Demonstrated Practices" that stated they could create savings by utilizing tipped employees to perform non-tip producing work, a Department of Labor investigative report that found these activities were ongoing, and a "Core Manual" that sets forth a uniform training program.  *Id.* at 363-64 ("Applebee's applied national uniform policies and practices relevant to its servers and bartenders, including policies concerning the tip credit, manager bonuses for productivity, complaint resolution , and job descriptions.").  Plaintiffs here submit nothing close to this type of evidence.

Ultimately, Plaintiffs ask this Court to conditionally certify a class of hundreds of employees based on the boiler-plate declarations of four employees who simply know of other employees by name and have received "documentation" from Defendants and nothing more.  This does not come close to meeting Plaintiff's burden no matter how "modest" it is.  Thus, neither certification nor notice to other tipped employees should be granted.

### E.  If this Court were to Certify an FLSA Collective, it Should Not Approve the Class Notice and Consent Form or Plaintiffs' Notice Plan

For the reasons stated above, certification of an FLSA collective is not appropriate in this case. Even if *arguendo* this Court disagrees, however, Plaintiffs' proposed notice and consent form should be revised as it is inaccurate, inconsistent, and prejudicial.  Likewise, Plaintiffs' proposed notice plan should not be approved.

#### 1.  A Two-Year Notice Period Is Appropriate

The statute of limitations under the FLSA is two years.  29 U.S.C. § 255(a).  The statute of limitations is raised to three years only for willful violations of the statute.  Id.  Nothing in Plaintiffs' Motion supports a claim for a willful violation, thus, the proper notice period is two years.  Furthermore, regardless of the length of statute of limitations, under the FLSA the notice period should be measured from conditional certification.  *Ritz v. Mike Rory Corp.*, No. 12 Civ.

367, 2013 U.S. Dist. LEXIS 61634, at *8 (E.D.N.Y. Apr. 30, 2013) ("[U]nder the FLSA, the notice period generally should be measured from the date of the court's order granting the motion for conditional certification, not from the date that the complaint was filed.") (citing *Hernandez v. Immortal Rise*, Inc., No. 11 Civ. 4360, 2012 U.S. Dist. LEXIS 136556, at *20 (E.D.N.Y. Sept. 24, 2012)), *reconsideration denied*, No. 12 Civ. 367, 2013 U.S. Dist. LEXIS 67840 (E.D.N.Y. May 13, 2013); *Doucoure v. Matlyn Food, Inc.*, 554 F. Supp. 2d 369, 373 (E.D.N.Y. 2008) ("Any employee similarly situated to [named plaintiff] who worked for [defendant] within three years of the date of the notice should therefore be provided with notice of the instant lawsuit and of the opportunity to opt into it as a plaintiff."); *Anglada v. Linens 'N Things, Inc*., No. 06 Civ. 12901 (CM)(LMS), 2007 U.S. Dist. LEXIS 39105, at *26 n.5 (S.D.N.Y. April 26, 2007) (finding a notice period preceding the issuance of the notice "more in keeping with § 256(b)"), *adopted*, 2007 U.S. Dist. LEXIS 38918 (S.D.N.Y. May 29, 2007); *Whitehorn v. Wolfgang's Steakhouse, Inc*., 767 F. Supp. 2d 445, 451 (S.D.N.Y. 2011) ("courts generally permit plaintiffs to send notice to those employed during the three year period prior to the date of the Order or to the mailing of the notice.")

### 2.   **Plaintiffs' Proposed Notice is Incorrect, Inappropriate and Prejudicial**

Plaintiffs' proposed Notice and Consent form should not be approved for many reasons. First, Plaintiffs' include the wrong notice period.  As demonstrated *supra*, the notice period should be two years from conditional certification.  However, even if the Court were to disagree with Defendants, Plaintiffs' proposed notice must still be rejected because it is internally inconsistent. In the first paragraph of the proposed notice Plaintiffs state that the class of employees includes those employed starting from October 3, 2013.  See Plaintiffs' Proposed Notice, Ex. G to Declaration of Brian S. Schaffer submitted with Plaintiffs' Motion.  Notably, the Proposed Notice

refers to the notice period beginning on September 3, 2011.  Id. at Sections I. 1. and Section II. 1.

The inconsistent dates are inaccurate and confusing.  As it is drafted, there is no way to tell what

the correct notice period is or what potential plaintiffs are included in the collective action.

On the first page of the Proposed Notice, Plaintiffs describe the claims of the action and

include claims that employees were not paid proper overtime wages.  Id.  Plaintiffs' motion for

conditional certification provides zero support for those claims.  The declarations submitted

provide no support or statements regarding overtime pay.  Thus, these claims should not be

included in the notice.

The structure and language in the Proposed Notice is prejudicial.  The very first line of the

proposed notice, in bold lettering, instructs the recipients to "Please mail this Consent form to

Plaintiffs' attorneys using the enclosed envelope."  Id.  Before a recipient knows anything about

the case, s/he is being told to mail the form back in.  Furthermore, the reader is not told until the

fourth full paragraph that the "Court has not decided who is right and wrong."  Id.  And that comes

after two full paragraphs describing the Plaintiffs' claims and explaining to the recipient that the

Court has conditionally certified the lawsuit.  Id.  Plaintiffs are improperly creating the impression

that the Court has endorsed the merits of the case before informing the recipient that there have

been no determinations.

The language in the anti-retaliation clause is also prejudicial as is the lack of information

that a recipient is under no obligation to return the form or join the suit.  Additionally, the Proposed

Notice does not include Defendants' attorneys' names and contact information, it does not inform

the recipient that opt-in plaintiffs may be required to provide information, be deposed or testify in

court, and it also does not provide clear enough guidance that the opt-in plaintiffs have the right to

represented by their own counsel.  *See Dong Yuan v. & Hair Lounge Inc*., No. 18-CV-11905 (AT)

(BCM), 2019 U.S. Dist. LEXIS 230330, at *22-23 (S.D.N.Y. Nov. 7, 2019) (Courts in this District have also held that the notice should include a warning that opt-in plaintiffs may be required to provide information, appear for deposition, or testify in court … The Court also agrees that the notice should provide clearer guidance regarding the opt-in plaintiffs' right to be represented by counsel other than [plaintiffs' counsel]"); *Saloman v. Adderley Indus.*, 847 F. Supp. 2d 561, 566-67 (S.D.N.Y. 2012).

### 3.  Only Last Known Mailing Addresses Should Be Provided

Plaintiffs ask this Court to order Banta to produce all of the following information for each member of the putative collective: name, "last known addresses, social security numbers, telephone numbers, e-mail addresses, work locations, and dates of employment."  Motion at 18. If a collective is certified, only names and last known mailing addresses should be ordered produced; privacy interests outweigh Plaintiffs' unsubstantiated request for the production of other contact information.  *Fengler v. Crouse Health Found.*, Inc., 595 F. Supp. 2d 189, 198 (N.D.N.Y. 2009) (finding that in the interest of privacy, telephone numbers, email addresses, Social Security numbers, and dates of birth should not be produced for notification purposes); *Gordon v. Kaleida Health,* No. 08-CV- 378S, 2009 U.S. Dist. LEXIS 95729, at *9 (W.D.N.Y. Oct. 14, 2009) (same); *Hintergerger v. Catholic Health Sys.*, No. 08-CV-380S, 2009 U.S. Dist. LEXIS 97944, at *13 (W.D.N.Y. Oct. 21, 2009) (same); *Mohamed v. Sophie's Cuban Cuisine Inc.*, No. 14-CV-3099 (TPG), 2015 U.S. Dist. LEXIS 126012, at *13-14 (S.D.N.Y. Sept. 21, 2015) (same regarding telephones and Social Security numbers).  Plaintiffs have, likewise, identified no need for notice by email and text message as well as mailing address.  *Sharma v. Burberry Ltd.*, 52 F. Supp. 3d 443 (E.D.N.Y. 2014) (limiting notice to first class mail and noting "[h]istorically, first class mailing has been utilized because it provides a controlled method by which individual notification

can be provided through a reliable process which ensures that proper notice is received by the potential class members." (quoting *Hinterberger*, 2009 U.S. Dist. LEXIS 97944, at *13; *Park v. FDM Grp. Inc.*, No. 16-CV-01520 (LTS)(SN), 2019 U.S. Dist. LEXIS 86309, at *18 (S.D.N.Y. May 22, 2019) ("Plaintiffs may not distribute the notice via text message.").

### 4.   Banta Should Not Be Required To Post The Notice And Consent Form

Plaintiffs also request that the Court order Defendants to post "notice in a conspicuous location at each Buffalo Wild Wings restaurant."  Motion at 18.  Such a request is unsubstantiated and would be improperly invasive of Banta's rights, unduly burdensome, impractical, and ineffective.  As Plaintiffs have not established that notice by U.S. mail would be insufficient, there is no reason to believe that posting is necessary in this case.  *Garcia v. Spectrum of Creations, Inc.*, 102 F. Supp. 3d 541, 551 (S.D.N.Y. 2015) (a posting of notice in the workplace is not always an effective or even appropriate way to reach similarly situated employees, and that such a posting may have negative effects on the workplace environment."); *Michael v. Bloomberg L.P.*, No. 14-cv-2657(TPG), 2015 U.S. Dist. LEXIS 51030, at *4 (S.D.N.Y., Apr. 17, 2015) (posting of notice in workplace not appropriate "absent a showing that a significant number of notices were returned as undeliverable") (citations omitted); *Mohamed*, 2015 U.S. Dist. LEXIS 126012, at *14 (same); *Gonzalez v. Scalinatella, Inc.*, No. 13-CIV-3629 (PKC), 2013 U.S. Dist. LEXIS 168540, at *13 ("First Class Mail is sufficient to provide potential class members with notice in this case…notice need not be posted") (S.D.N.Y. Nov. 25, 2013).  Compelling Banta to post notice of the lawsuit, which inherently suggests some wrongdoing by Banta, despite there having been no determination of liability on the merits and Banta vehemently disputing the merits of Plaintiffs' claims, raises serious concerns about compelled speech.  Furthermore, posting notice at Buffalo Wild Wings locations will only provide notice to current employees for which Banta has updated and current

contact information so those employees are sure to receive notice by mail.  Additionally, Plaintiffs have not set forth a compelling reason why a reminder notice is necessary in this case. *Guzelgurgenli v. Prime Time Specials*, Inc., 883 F. Supp. 2d 340 (E.D.N.Y. 2012) (denying plaintiffs' request to distribute a reminder notice when plaintiffs did "not identif[y] any reason why a reminder notice [wa]s necessary").

### 5.  Equitable Tolling Is Not Appropriate In This Case

Equitable tolling of the FLSA statute of limitations until such time that notice can be sent is appropriate "only in rare and exceptional circumstances … where a plaintiff has been prevented in some extraordinary way from exercising his rights." *Vasto v. Credico (USA) LLC*, No. 15-cv-9298 (PAE), 2016 U.S. Dist. LEXIS 60158, at *16 (S.D.N.Y. May 5, 2016) (internal citations omitted).  Courts routinely reject requests for equitable tolling due to an absence of rare or extraordinary circumstances.  *See, e.g., Wolfgang's,* 2019 U.S. Dist. LEXIS 67948, at *26; *Dong Yuan*, 2019 U.S. Dist. LEXIS 230330 at *29-30 ("this case does not present the "rare and exceptional circumstances" that would merit equitable tolling."); *Moses v. Griffin Indus., LLC*, No. 18-cv-1200 (ALC) (OTW), 2020 U.S. Dist. LEXIS 181017, at *14 (S.D.N.Y. Sep. 30, 2020) ("The Second Circuit has cautioned that "equitable tolling is considered a drastic remedy applicable only in 'rare and exceptional circumstance[s],'") (quoting *A.Q.C. ex rel. Castillo v. U.S.*, 656 F.3d 135, 144 (2d Cir. 2011)).  No such rare or extraordinary circumstances exist here.

## V.   CONCLUSION

Plaintiffs have utterly failed to establish, by any standard, that they are similarly situated to the proposed class they seek to certify or that Defendants had any sort of common policy that was in violation of the law.  For these reason and the other reasons set forth in the Opposition, Plaintiffs' Motion should be denied.

Respectfully submitted,

Dated: April 5, 2021

/s/ Jason P. Sultzer
Jason P. Sultzer
Joseph Lipari
Mindy Dolgoff
**THE SULTZER LAW GROUP, P.C.**
85 Civic Center Plaza, Suite 200
Poughkeepsie, New York 12601
(845) 483-7100

*Attorneys for Defendants*