UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: __4/25/2022__
```

PATRICK IMBARRATO and NICK PRAINO, *on behalf of themselves and all others similarly situated*,

Plaintiffs,

-against-

BANTA MANAGEMENT SERVICES, INC.;
BANTA BWW MDT, LLC; BANTA BWW ON,
LLC; BANTA NINE MALL, LLC; BANTA BWW
NB, LLC; GEORGE BANTA, SR.; and GEORGE
BANTA, JR.,

Defendants.

No. 18-cv-5422 (NSR)
OPINION & ORDER

NELSON S. ROMÁN, United States District Judge

Plaintiffs Patrick Imbarrato and Nick Praino (collectively, "Plaintiffs") bring this action, on behalf of themselves and others similarly situated, against Defendants Banta Management Services, Inc. ("Banta Management"), Banta BWW MDT, LLC ("BWW Middletown"), Banta BWW ON, LLC ("BWW Oneonta"), Banta Nine Mall, LLC ("BWW Wappingers Falls"), Banta BWW NB, LLC ("BWW Poughkeepsie" and together with Banta Management, BWW Middletown, BWW Oneonta, and BWW Wappingers Falls," Corporate Defendants"), George E. Banta, Sr., and George E. Banta, Jr. (all collectively, "Defendants"), asserting claims under the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL"). (ECF No. 1.)

On April 20, 2021, Plaintiffs filed a motion for conditional class certification, court-authorized notice, and expedited discovery pursuant to FLSA. (ECF No. 54.) Defendants opposed the motion. (ECF No. 57.) For the following reasons, Plaintiffs' motion is GRANTED in part and DENIED in part.

1

## BACKGROUND

Defendant Banta Management is a family-run real estate development and management company based in Poughkeepsie, New York. ("Compl.," ECF No. 1 ¶ 2.) Buffalo Wild Wings ("BWW") is a casual dining restaurant and sports bar franchise with locations across the United States and other countries. (*Id.* ¶ 3.) Banta Management owns and operates three BWW franchises in the state of New York: one in Middletown, one in Wappingers Falls, and one in Oneonta. (*Id.*)

Plaintiffs are former servers at the BWW in Middletown. (*Id.* ¶¶ 21, 27.) Plaintiff Imbarrato worked at the BWW in Middleton from in or around August 2013 through February 8, 2018. (*Id.* ¶ 21.) Plaintiff Praino worked at the Middletown BWW from in or around May 2013 through November 2013 and from in or around December 2014 through February 2015. (*Id.* ¶ 27.) Plaintiffs bring this action on behalf of themselves and other similarly situated tipped employees who worked at BWW restaurants owned by Defendants from October 3, 2013, through the present.[1] (*Id.* ¶ 113.)

Plaintiffs allege Defendants failed to provide them with proper minimum wages and overtime wages under federal and state law. Throughout Plaintiffs' employment, Defendants applied a tip credit to the minimum wage rate paid to Plaintiffs. (*Id.* ¶¶ 129, 136.) However, Plaintiffs allege they performed non-tip-producing side-work for more than 20% of the time worked and/or two hours on a consistent basis, including pre-shift side-work, running side-work, and closing side-work. (*Id.* ¶¶ 130, 137.) Defendants did not notify Plaintiffs of the tip credit provisions of the FLSA or NYLL. (*Id.* ¶¶ 129, 136.) Furthermore, Defendants failed to pay Plaintiff Imbarrato overtime wages when he worked over 40 hours per week, and failed to pay

---

[1] The limitations period for Plaintiffs' claims was extended based on a pre-litigation tolling agreement entered into by the parties that tolled the statute of limitations on Plaintiffs' FLSA and NYLL claims between July 28, 2016, and April 9, 2018. (*Id.* ¶ 113 n.12., Ex. C.)

either Plaintiff spread-of-hours pay or call-in pay as required by the NYLL. (*Id.* ¶¶ 132–33, 138–39.) Defendants also failed to furnish Plaintiffs with proper wage notices and wage statements listing rates paid, gross wages, and tip allowance, as required by the NYLL. (*Id.* ¶¶ 134–35, 140–41.)

In addition to suing Corporate Defendants, Plaintiffs seek to hold George Banta, Sr., the founder and owner of BWW, and his son George Banta, Jr., the Vice President of Banta Management, individually liable for violations of the FLSA and NYLL. (*Id.* ¶¶ 86, 100.) Plaintiffs allege that Corporate Defendants, George Banta Sr., and George Banta Jr. jointly employed Plaintiffs and are Plaintiffs' employers under the FLSA and NYLL. (*Id.* ¶¶ 32–35.) Plaintiffs also seek to hold the top ten shareholders of Banta Management jointly and severally liable for unpaid wages pursuant to New York Business Corporation Law ("NY BCL") § 630, and the top ten members of the remaining Corporate Defendants jointly and severally liable for unpaid wages pursuant to New York Limited Liability Company Law ("NY LLCL") § 609. (*Id.* ¶¶ 44, 53, 62, 71, 80.)

On March 19, 2019, Defendants moved to partially dismiss the Complaint. (ECF No. 34.) On March 20, 2020, this Court granted in part Defendants' motion, dismissing Plaintiffs' claim to hold individua Defendants George E. Banta Sr. and George E. Banta Jr. liable under NY BCL § 630 or NY LLCL § 609(c) and Plaintiffs' claim seeking damages for Defendants' failure to provide annual written wage notices pursuant to a prior version of NYLL § 195(a). (ECF No. 41.)

On April 20, 2021, Plaintiffs filed a motion for conditional class certification, court-authorized notice, and expedited discovery pursuant to the FLSA. (ECF No. 54.) They seek to conditionally certify a collective action on behalf of tipped employees who worked at any of Defendants' three franchised BWW restaurants and requests the Court to authorize notice to be

sent to potential class members.  (*See* "Pls. Mot.," ECF No. 55.)  Defendants oppose the motion.

("Defs. Opp.," ECF No. 57.)  Plaintiffs filed a response in support of their motion.  ("Pls. Reply,"

ECF No. 59.)

## LEGAL STANDARD

The FLSA provides that "any one or more employees" may bring an action against an

employer "for and on behalf of himself or themselves and other employees similarly situated."  29

U.S.C. § 216(b).  To become parties to such an action, employees other than the named plaintiffs

must "opt in" by filing written consents in the court in which the action is brought.  *Id.*  "Although

they are not required to do so by the FLSA, district courts 'have discretion, in appropriate cases,

to implement [§ 216(b)] . . . by facilitating notice to potential plaintiffs' of the pendency of the

action and of their opportunity to opt-in as represented plaintiffs."  *Myers v. Hertz Corp.*, 624 F.3d

537, 554 (2d Cir. 2010) (quoting *Hoffmann–La Roche Inc. v. Sperling*, 493 U.S. 165, 169 (1989)).

The Second Circuit has endorsed a two-step method to determine whether a case should

proceed as a collective action under FLSA.  *See Myers*, 624 F.3d at 554.  In the first step—

commonly known as "conditional certification"—the named plaintiffs must make a "'modest

factual showing' that they and potential opt-in plaintiffs 'together were victims of a common

policy or plan that violated the law,'" *id.* at 555 (quoting *Hoffmann v. Sbarro, Inc.*, 982 F. Supp.

249, 261 (S.D.N.Y. 1997)), at which point the court may send (or direct plaintiffs' counsel to send)

a notice to potential opt-in plaintiffs.  *Id.*  At the second stage, which typically occurs after

discovery is completed, the court determines whether the plaintiffs who opted in are in fact

"similarly situated" to the named plaintiffs.  *Id.*  If not, the court may "de-certif[y]" the collective

and dismiss the opt-in plaintiffs' claims without prejudice.  *Id.*

However, as the purpose of this first stage is "merely to determine whether 'similarly situated' plaintiffs do in fact exist," *Prizmic v. Armour, Inc.*, No. 05-CV-2503(DLI)(MDG), 2006 WL 1662614, at *2 (E.D.N.Y. June 12, 2006), plaintiffs' burden at the conditional certification stage is "minimal." *Amador v. Morgan Stanley & Co. LLC*, 2013 WL 494020, at *4 (S.D.N.Y. Feb. 7, 2013). "Plaintiffs can meet this burden by showing that 'there are other employees who are similarly situated with respect to their job requirements and with regard to their pay provisions.'" *Fraticelli v. MSG Holdings, L.P.*, 2014 WL 1807105, at *1 (S.D.N.Y. May 7, 2014) (quoting *Myers*, 624 F.3d at 555). Documents properly considered in this inquiry "include plaintiffs' 'own pleadings, affidavits, declarations, or the affidavits and declarations of other potential class members.'" *Trinidad v. Pret A Manger (USA) Ltd.*, 962 F. Supp. 2d 545, 557–58 (S.D.N.Y. 2013) (quoting *Hamadou v. Hess Corp.*, 915 F. Supp. 2d 651, 661 (S.D.N.Y. 2013)). These documents "must set forth 'a defendant's plan or scheme to not pay overtime compensation' and must identify 'by name similarly situated employees.'" *Fernandez v. On Time Ready Mix, Inc.*, 2014 WL 5252170, at *1 (E.D.N.Y. Oct. 4, 2014) (quoting *Sobczak v. AWL Indus., Inc.*, 540 F. Supp. 2d 354, 362 (E.D.N.Y. 2007)). But "[i]n making this showing, 'nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy or plan' is required." *Sexton v. Franklin First Fin., Ltd.*, 2009 WL 1706535, at *3 (E.D.N.Y. June 16, 2009) (quoting *Scholtisek v. Eldre Corp.*, 229 F.R.D. 381, 387 (W.D.N.Y. 2005)).

Consistent with the "minimal" burden of proof assigned to plaintiffs at the conditional certification stage, the court "should not weigh the merits of the underlying claims," *Hamadou*, 915 F. Supp. 2d at 662 (citing *Lynch v. United Servs. Auto Ass'n,* 491 F. Supp. 2d 357, 368 (S.D.N.Y. 2007)), and should not "resolve factual disputes, decide substantial issues going to the

ultimate merits, or make credibility determinations." *Jackson v. Bloomberg, L.P.*, 298 F.R.D. 152, 158 (S.D.N.Y. 2014) (internal quotation marks omitted). Accordingly, where there is a conflict between the parties as to the facts underlying plaintiffs' wage-and-hour claims, the court should treat plaintiffs' attestations as true. *See Cortes v. New Creators, Inc.*, 2015 WL 7076009, at *1 n.1 (S.D.N.Y. Nov. 12, 2015).

However, "[w]hile plaintiff's burden at this stage is modest, it is not non-existent." *Khan v. Airport Mgmt. Servs. LLC*, 2011 WL 5597371, at *5 (S.D.N.Y. Nov. 16, 2011). "The 'modest factual showing' cannot be satisfied simply by 'unsupported assertions.'" *Myers*, 624 F.3d at 555 (quoting *Dybach v. State of Fla. Dept. of Corrections*, 942 F.2d 1562, 1567 (11th Cir. 1991)). "Conclusory allegations are not enough." *Morales v. Plantworks, Inc.*, 2006 WL 278154, at *3 (S.D.N.Y. Feb. 2, 2006) (quoting Wright, Miller & Kane, 7B Federal Practice and Procedure § 1807 (3d ed. 2002)).

## DISCUSSION

Plaintiffs move for conditional class certification of a FLSA collective action on behalf of tipped employees who worked at Defendants' three franchised BWW restaurants. Plaintiffs allege that they are restaurant servers and bartenders who were subject to Defendants' common practice of using employees paid sub-minimum, tip-credit hourly wages to perform improper or excess amounts of non-tipped work. (Pls. Mot. at 1.) Plaintiffs allege that these policies and practices were in effect at all three of the BWW restaurants—BWW Middleton, BWW Wippingers Falls, and BWW Oneonta—operated by Defendants. (*Id.* at 2.) Plaintiffs ask the Court to authorize the sending of notice by mail, email, and text message of the lawsuit to all tipped employees who worked at any of Defendants' BWW restaurants since September 26, 2013. (*Id.* at 15–16.)

## I.       Conditional Class Certification

Plaintiffs must make a "modest factual showing" sufficient to demonstrate that the named Plaintiffs and proposed opt-in plaintiffs together were "victims of a common policy or plan that violated the law." *Delaney*, 261 F.R.D. at 58.  The court must determine whether there is a "factual nexus" between the named plaintiffs' situation and the situation of other employees.  *Id.*  "The standard for conditionally certifying a collective action is a lenient evidentiary standard."  *Id.* (internal quotation marks omitted).  While a modest factual showing cannot be satisfied by unsupported assertions or conclusory allegations, it should "remain a low standard of proof because the purpose of this first stage is merely to determine whether 'similarly situated' plaintiffs do in fact exist."  *Myers v. Hertz Corp.*, 624 F.3d 537, 555 (2d Cir. 2010); *Jacob v. Duane Reade, Inc.*, No. 11-CV-0160(JPO), 2012 WL 260230, at *4 (S.D.N.Y. Jan. 27, 2012).

Plaintiffs have met the minimal burden and made a modest factual showing for conditional certification.  The Court finds that Plaintiffs have made a preliminary showing that there are other tipped employees who are similarly situated in their job requirements and pay provisions and who are subject to Defendants' compensation policies or practices that allegedly violate the FLSA. Plaintiffs submitted multiple declarations of tipped employees from two of Defendants' three BWW restaurants in support of their claims.  The Court disagrees with Defendants' claims that the declarations submitted by Plaintiffs are "cookie-cutter" and vague and conclusory.  (Defs. Opp. at 10.)  To the contrary, Plaintiffs' declarations described the specific types of non-tip producing side work tasks each employee was required to perform along with the length of time and time of day during which they were required to perform such non-tipped work.  (*See* ECF No. 56, Exhibits C– F.)  There is also adequate preliminary showing that the alleged practice was common among the three BWW restaurants.  Plaintiffs allege that Defendants maintain central control, oversight, and

direction over Plaintiffs and tipped employees at all three BWW locations.  (Compl. at 3.) Plaintiffs offer a 2015 deposition of George Banta Jr. as evidence of Defendants' overarching control over the policies and management of the BWW locations.  ("2015 Decl.," ECF No. 1, Ex. A.)  Plaintiffs also submitted screenshots of Defendants' company-wide website that contained information relating to all the BWW businesses.  (ECF No. 56, Exhibit A.)  Specifically, Defendants' website provided information on employment opportunities, including positions at BWW restaurants.  (*Id.*)  Plaintiffs' declarations also showed that the tipped employees received terms, conditions, and policies that they must follow at BWW.  (*See* ECF No. 56, Exhibits C–F.) Altogether, the Court finds that Plaintiffs have made a "modest factual showing" that Plaintiffs and potential class members were subject to a common policy or practice among the BWW locations.

The Court declines to consider Defendants' arguments on the merits of Plaintiffs' FLSA violation claims as inappropriate at this stage.  The Second Circuit case law makes clear that in a conditional certification analysis, Plaintiffs merely need to make a "modest factual showing" that Plaintiffs and collective action members are together the victims of a common policy or scheme and that the opt-in plaintiffs are similarly situated to the named plaintiffs.  *See Myers*, 624 F.3d at 544.  Defendants' arguments that they did not violate the FLSA or that the types of side work tasks varied among the three BWW locations go toward the merits of the FLSA claims.  Defendants have overlooked that the purpose of this first stage of conditional certification is "merely to determine whether 'similarly situated' plaintiffs do in fact exist," *Prizmic*, 2006 WL 1662614, at *2, and that the Court "should not weigh the merits of the underlying claims," *Hamadou*, 915 F. Supp. 2d at 662 (citations omitted).

Accordingly, the Court finds that Plaintiffs have met their low burden and GRANTS conditional class certification.

## II.     Notice To Be Provided To Collective Action Members

Because the Court determined that Plaintiffs met the modest factual showing requirement and sufficiently demonstrated that the other tipped employees and named Plaintiffs are similarly situated, the Court permits notice to be sent to the potential opt-in plaintiffs.

There is no specific guidance on the form that court-authorized notices should take, but courts should consider the "overarching policies" of collective suits and should ensure that the putative plaintiffs receive "accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate." *Fasanelli v. Heartland Brewery, Inc*., 516 F. Supp. 2d 317, 323 (S.D.N.Y. 2007); *Gjurovich v. Emmanuel's Marketplace, Inc*., 282 F. Supp. 2d 101, 105 (S.D.N.Y. 2003).  With that in mind, the notice should generally contain:

> a description of some or all of the following: (1) the purpose of the notice; (2) the nature of the lawsuit filed and the relief being sought; (3) the proposed class composition; (4) the legal effect of joining the lawsuit; (5) the fact that the court has not taken any position regarding the merits of the lawsuit; (6) how to join the lawsuit; (7) the purely voluntary nature of the decision and the legal effect of not joining the lawsuit; (8) the prohibition against retaliation; and (9) the relevant contact information for any inquiries.

*Salomon v. Adderley Indus., Inc.* 847 F. Supp. 2d 561, 566 (S.D.N.Y. 2012).  Courts in this District have also held that the notice should include a warning that opt-in plaintiffs may be required to provide information, appear for deposition, or testify in court.  *Id.* at 567.

### a.   Content of Notice

Plaintiffs request the Court to authorize notices to be sent to all tipped employees who work or have worked at Defendants' BWW locations since September 26, 2013.  (Pls. Mot. at 15–16.) Plaintiffs submitted a proposed notice and a proposed email and text message notice with their

motion.  (ECF No. 56, Exhibits G & H.)  Plaintiffs then submitted a revised proposed notice that incorporates changes to address Defendants' concerns raised in their opposition.  ("Revised Proposed Notice," ECF 59, Exhibit 1.)  The Court finds the redlines within Plaintiffs' Revised Proposed Notice make moot the Defendants' arguments regarding (i) the inconsistency in starting dates within the notice, (ii) the starting sentence stating "Please mail this Consent form to the Plaintiffs' attorneys using the enclosed envelope."; (iii) language regarding a court's endorsement of merits of the case, (iv) language informing recipients of the possibility being required to be deposed or testified in court, and (v) informing recipients of their rights to their own counsel. (Defs. Opp. at 18–19.)  Accordingly, the Court will only address the remaining contentions by Defendants as to the content of the notice.

First, Defendants objects to the inclusion of unpaid overtime wages as part of the description for the collective action lawsuit.  (*Id.* at 19.)  Plaintiffs' Complaint explicitly challenges Defendants' practices with respect to minimum wages, overtime pay, and other wages.  (*See* Compl. ¶¶ 42, 51, 60, 69, 78, 115, 148–151.)  Accordingly, this Court finds the description of the collective action as proposed in the Revised Proposed Notice to be accurate.

Second, Defendants argues that the proposed notice is prejudicial because it does not include information that a recipient is under no obligation to return the consent form or to join the suit.  (Defs. Opp. at 19.)  The Court disagrees and finds that the language within the Proposed Notice make clear that this is a choice.  Specifically, the Revised Proposed Notice states that "*If you choose to join the FLSA Collective*, you have to read, sign, and promptly return the Consent to Sue form at the end of this Notice" and "*If you want to join the lawsuit,* your consent for must be post marked no later than . . ."  (Revised Proposed Notice at 3–4 (emphasis added).)  These statements make clear that joining the suit and returning the form is a choice, not a requirement.

Third, Defendants take issue with the proposed notice omitting the names of Defendants' attorneys' names and contact information.  (Defs. Opp. at 19.)  The Court agrees with Plaintiffs that this information should not be included.  *See Hong v. Haiku @ WP Inc.*, No. 19 CIV. 5018 (NSR), 2022 WL 263575, at *11 (S.D.N.Y. Jan. 28, 2022) (finding inclusion of such information risks inadvertent disclosure of material information between opt-in plaintiffs and defense counsel).

Fourth, Defendants asks for inclusion of guidance that opt-in plaintiffs have the right to be represented by their own counsel.  (Defs. Opp. at 19.)  This guidance is already clearly provided in paragraph 14 of the Revised Proposed Notice titled "Should I get my own lawyer?" (Revised Proposed Notice at 4.)

### b.  Limitations Period and Equitable Tolling

Plaintiffs request a three-year notice period, noting that FLSA expressly permits a three-year statute of limitations to remedy willful violations.  (Pls. Mot. at 17.)  Plaintiffs also request the FLSA statute of limitations be equitably tolled until such time that Plaintiffs can send notice to potential opt-in plaintiffs.  (*Id.* at 19.)  Defendants oppose equitable tolling and argue that a two-year notice period rather than three-year is appropriate because there has been no support for a claim of willful violation.  (Defs. Opp. at 17.)

Where parties dispute the willfulness of the violations, courts typically apply the three-year, rather than two-year, statute of limitations.  *See Yap v. Mooncake Foods, Inc.*, 146 F. Supp. 3d 552, 565 (S.D.N.Y. 2015); *Iglesias-Mendoza v. La Belle Farm, Inc.*, 239 F.R.D. 363, 369 (S.D.N.Y. 2007).  But while the "statute of limitations for opt-in plaintiffs' FLSA claims runs until they actually join the lawsuit; it does not relate back to the filing of the named plaintiff's complaint." *Gaspar v. Pers. Touch Moving, Inc.*, No. 13-cv-8187 (AJN), 2014 WL 4593944, at *7 (S.D.N.Y. Sept. 15, 2014) (citing 29 U.S.C. § 256(b) and *Ouedraogo v. A–1 Int'l Courier Serv.,*

11

*Inc.*, No. 12 Civ. 5651 (AJN), 2013 WL 3466810, at \*4 n. 2 (S.D.N.Y. July 8, 2013)).  However, because "equitable tolling issues often arise as to individual opt-in plaintiffs[,] . . . courts frequently permit notice to be keyed to the three-year period prior to the filing of the complaint, with the understanding that challenges to the timeliness of individual plaintiffs' actions will be entertained at a later date."  *Id.* (citation and internal quotation marks omitted).  Defendants "will not be prejudiced by a potentially over-inclusive notice" by using the date of the complaint's filing because it would "increase the likelihood that more party plaintiffs with timely claims consent to opt in, with the understanding that at the appropriate stage in the litigation, Defendants will have an opportunity to argue that each plaintiff's claim is untimely because equitable tolling does not apply."  *Alvarado Balderramo v. Taxi Tours, Inc.*, No. 15 CV 2181, 2017 WL 2533508, at \*6 (S.D.N.Y. June 9, 2017); *accord Lopes v. Heso, Inc.*, No. 16CV6796MKBRML, 2017 WL 4863084, at \*6 (E.D.N.Y. Oct. 27, 2017).

Here, there is a particularly strong basis for equitable tolling given the significant delay in ruling on this motion.  *See Yap*, 146 F. Supp. 3d at 565.  Indeed, some courts in this district "have found that the delay in ruling on a motion for conditional approval, coupled with the plaintiffs' diligence and avoiding prejudice to potential plaintiffs, is enough to grant equitable tolling."  *Guzman v. Three Amigos SJL Inc.*, 117 F. Supp. 3d 516, 528 (S.D.N.Y. 2015) (citing *Flood v. Carlson Rests. Inc.*, No. 14 Civ. 2740 (AT), 2015 WL 260436, at \*6 (S.D.N.Y. Jan. 20, 2015) and *McGlone v. Contract Callers, Inc.*, 867 F. Supp. 2d 438, 445 (S.D.N.Y. 2012)).

Accordingly, the Court will allow a three-year notice period and will permit equitable tolling until Plaintiffs send notice to opt-in plaintiffs.

c.  **Methods of Notice**

Plaintiffs request authorization for posting the notice in a conspicuous location at each of Defendants' BWW restaurants.  (Pls. Mot. at 18.)  Defendants object, claiming it is invasive of Defendants' rights, unduly burdensome, impractical, and ineffective.  (Defs. Opp. at 21.)  Courts have found that posting the notice at a defendant's physical locations is "a generally acceptable form of distributing information related to such notices."  *Hong*, 2022 WL 263575, at *12; *see also Ni v. Red Tiger Dumpling House Inc.*, No. CV193269GRBAKT, 2020 WL 7078533, at *12 (E.D.N.Y. Nov. 30, 2020) ("Courts in the Second Circuit 'regularly approve plaintiffs' request to post notices and consent forms in 'non-public areas' where potential collective members are likely to congregate, such as clock-in stations or break rooms.'").  This Court is not otherwise convinced by Defendants' broad assertions that this method of notification is unduly burdensome, impractical, or ineffective.  (*See* Defs. Opp. at 21.)  Accordingly, this Court approves Plaintiffs' request for authorization to post the notice at Defendants' three franchised BWW restaurants.

Plaintiffs also request for the notice to be disseminated by mail, email, and text message. Defendants object to the use of email and text messages.  (Defs. Opp. at 20.)  Courts in this district have often permitted more efficient means of providing notice than first class mail.  *See Hong*, 2022 WL 263575, at *8 (collecting cases).  Accordingly, this Court approves Plaintiffs' request to disseminate the notice by mail, email, and text message to potential opt-in plaintiffs.

For the foregoing reasons, the Court accepts (1) Plaintiffs' Revised Proposed Notice (ECF No. 59, Exhibit 1) as modified and authorizes the notice to be posted at Defendants' three franchised restaurants—BWW Middletown, BWW Wappingers Falls, and BWW Oneonta—and to be sent by mail, and (2) Plaintiffs' proposed text message notice and e-mail notice (ECF No.

56, Exhibit H) to be sent by e-mail and text message to all tipped employees employed by Defendants from September 26, 2013 to present.

## III.   Discovery

Plaintiffs seek production of computer-readable lists of the names, last known addresses, social security numbers, telephone numbers, email addresses, work locations, and dates of employment of all persons employed by Defendants as tipped employees at their BWW restaurants (Pls. Mot. at 18.)  Defendants posit that only names and last known mailing addresses should be disclosed due to privacy interests.  (Defs. Opp. at 20.)  As noted above, the Court permits Plaintiffs to notify potential opt-in plaintiffs by email and text message and, as such, telephone numbers and email addresses are needed for such notification methods.   Work locations and dates of employment are also needed in order for Plaintiffs to notify the relevant individuals.

Plaintiffs specified their request for social security numbers are only for those individuals whose consent forms are returned undeliverable and proposed entering into a confidentiality agreement with Defendants regarding the use of the social security numbers.  District courts have been split over requests for the disclosure of social security numbers.  *Compare Patton v. Thomson Corp.*, 364 F. Supp. 2d 263, 268 (E.D.N.Y. 2005) (approving disclosure) *with Chowdhury v. Duane Reade, Inc.*, 06 Civ. 2295(GEL), 2007 WL 2873929, at *6 (S.D.N.Y. Oct. 2, 2007) (denying disclosure).  The Court does not see the need for disclosure of the employees' social security numbers at this stage.  If Plaintiffs find that a large number of notices are returned as undeliverable, Plaintiffs may raise the issue for the Court to reconsider at that time.

Accordingly, the Court GRANTS Plaintiffs' request for disclosure of information, but DENIES with respect to the disclosure of social security numbers.  Defendants shall produce the names, last known addresses, telephone numbers, email addresses, work locations, and dates of

14

employment of all individuals who worked as tipped employees for Defendants at the three BWW locations from September 26, 2013 to present.

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion for conditional certification of the FLSA collective action, approval of the proposed notices, and request for discovery is GRANTED in part and DENIED in part.  The parties are directed to contact Magistrate Judge Judith C. McCarthy within 7 days of this Opinion & Order regarding production of discovery on an expedited basis. The Clerk of the Court is respectfully directed to terminate the motion at ECF No. 54.


Dated: April 25, 2022
      White Plains, NY

SO ORDERED:

_____

NELSON S. ROMÁN
United States District Judge