UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PATRICK IMBARRATO on behalf of himself and all others similarly situated, **Plaintiff,** -against- BANTA MANAGEMENT SERVICES, INC., BANTA BWW MDT, LLC, GEORGE E. BANTA, SR., and GEORGE E. BANTA, JR., **Defendants.** | No: 18 Civ. 5422-NSR-JCM |

**DECLARATION OF FRANK J. MAZZAFERRO IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

I, Frank J. Mazzaferro, declare as follows:

1.      I am a partner at the firm of Fitapelli & Schaffer, LLP ("F&S") in New York, New York, along with Werman Salas P.C., Class Counsel herein.  F&S is a nationally recognized law firm based in New York City that represents plaintiffs in a wide variety of employment matters, including individual and class action litigation involving wage and hour, discrimination, and harassment claims. F&S has significant experience prosecuting wage and hour class and collective actions.

2.      I am one of the lawyers primarily responsible for prosecuting Plaintiff's claims.

3.      I make these statements based on personal knowledge and would so testify if called as a witness at trial.

**PROCEDURAL HISTORY**

4.      Before initiating the instant action, Class Counsel conducted a thorough investigation into Defendants' business and ownership, which included research into their wage

and hour policies and/or practices, factual and legal research into the underlying merits of Plaintiffs' claims and possible defenses, factual and legal research as to the proper measure of damages, and the likelihood of collective and class action certification.

5.       Furthermore, F&S conducted in-depth interviews with Patrick Imbarrato, Nick Praino, Nicholas Azierski, Jordan Battle, Ashley Korycki, Avinash Bhagwandeen, Alek Mckeever, Andres Arnesto, Krystal Boughen, and Abraham Merchant who had worked as servers and bartenders (collectively "tipped employees") at Defendants' Buffalo Wild Wing restaurants. These interviews helped F&S determine the hours that tipped employees worked, the wages they were paid, the nature of their duties, and Defendants' wage and hour policies.

6.       On June 7, 2016, Class Counsel, in an effort to explore a potential pre-litigation resolution of the claims, sent a letter and draft complaint to Defendants regarding potential violations of Federal Labor Standard Act ("FLSA") and the New York Labor Law ("NYLL").

7.       On August 1, 2016, the parties entered into a tolling agreement preserving the statute of limitations for tipped employees who worked for Defendants at their Buffalo Wild Wing restaurants located at 1794 South Rd, Wappingers Falls, New York 12590, 768 NY-28, Oneonta, New York 13820, and 567 NY-211, Middletown, New York 10941 (collectively "Covered Restaurants").

8.       After numerous discussions, the parties agreed to mediation before Martin S. Scheinman. In advance of the mediation the parties exchanged hundreds of pages of documentation, Plaintiffs calculated class-wide damages for tipped employees, and the parties prepared mediation statements.

9.       On January 11, 2018, the parties participated in a mediation with Mr. Scheinman. A settlement was not reached. After further unsuccessful negotiations, on June 15, 2018, Plaintiffs

filed the instant action. Dkt. No. 1.

10.    Plaintiffs' Complaint alleges that Defendants failed to pay tipped employees the proper minimum wage and overtime pay. Specifically, the Complaint alleges that Defendants could not utilize the tip credit minimum wage because Defendants: (1) failed to provide written notice of the tip credit pursuant to the NYLL; and (2) required tipped employees to engage in a dual occupation and/or spend more than 20% or two hours performing non-tipped side work in violation of the FLSA and NYLL. *Id.*

11.    On August 17, 2018, Defendants filed a pre-motion request with the Court in advance of their anticipated motion to dismiss Plaintiffs' Complaint in part. Dkt. No. 20. On August 20, 2018, Plaintiffs filed a pre-motion request with the Court in advance of their anticipated motion for conditional certification pursuant to the FLSA. Dkt. No. 21.

12.    On January 3, 2019, the Court granted Defendants' request and denied Plaintiffs' request without prejudice pending the Court's decision on Defendants' motion. Dkt. No. 30.

13.    On February 4, 2019, Defendants served Plaintiffs with their motion to dismiss arguing, in part, that the Complaint failed to adequately allege that the Individual Defendants were employers within the meaning of the FLSA and NYLL and that Plaintiffs' NYLL wage notice allegations failed to allege that Plaintiffs suffered an injury. The motion was fully briefed and filed with the Court on March 19, 2019. Dkt. Nos. 33-36.

14.    On March 20, 2020, the Court issued an Order denying Defendants' motion in part. Dkt. No. 41.

15.    On April 20, 2020, Defendants filed their Answers. Dkt. Nos. 42, 43.

16.    On April 27, 2020, Plaintiffs again requested a pre-motion conference in advance of their anticipated motion for conditional certification pursuant to the FLSA. Dkt. No. 44. The

request was granted on February 2, 2021. Dkt. No. 52.

17.    The fully briefed motion for conditional certification was filed on April 20, 2021. Dkt. Nos. 54-59.

18.    On April 25, 2022, the Court granted Plaintiffs' motion. Dkt. No. 60. As a result of 216(b) notice, approximately 114 tipped employees opted into the instant action.

19.    Towards the conclusion of the opt-in period, on September 21, 2022, the parties appeared before Magistrate Judge Judith C. McCarthy. During the conference, the Court approved and subsequently "So Ordered" the parties' proposed discovery schedule. Dkt. Nos. 71-73.

20.    After the conference, the parties engaged in several discussions and exchanged several letters regarding the scope of opt-in discovery. Ultimately, the parties reached an agreement whereby 19 opt-in Plaintiffs who previously filed a consent with the Court (hereinafter the "Sample Group"), would be randomly selected. Dkt. No. 77. Defendants were permitted to serve the Sample Group with Requests for Production of Documents ("RFP") and Requests for Interrogatories ("ROG") that were negotiated by the parties as well as obtain deposition testimony. *Id*.

21.    On October 25, 2022, the parties served their initial written requests for discovery.

22.    Starting in or around January 2023, the parties began exchanging responses to written discovery requests. Defendants' initial production consisted of over 12,000 documents including handbooks, payroll records, schedules, employee folders, tip credit notices, arbitration agreements and other documents.

23.    On January 30, 2023, Plaintiffs served Defendants with discovery responses for 14 individuals, including the Named Plaintiff Patrick Imbarrato.

24.    On February 21, 2023, Plaintiffs served Defendants with discovery responses for 4

additional opt-in Plaintiffs. Plaintiffs also served Defendants with Deposition Notices for the Individual Defendants and Notices pursuant to Fed. R. Civ. P. 30(b)(6). In addition, Plaintiffs served Defendants with a letter outlining what Plaintiffs argued were deficiencies in Defendants' discovery responses and production.

25.     On February 22, 2023, the parties appeared before Magistrate Judge McCarthy for a status conference. One issue raised during the conference was alleged arbitration agreements which Defendants argued required some opt-in Plaintiffs to resolve their claims individually in arbitration. Defendants discussed moving to compel arbitration.

26.     Between February 22, 2023, and May 30, 2023, the parties engaged in several discussions and exchanged multiple emails regarding discovery deficiencies.

27.     On May 31, 2023, the parties appeared before Magistrate Judge McCarthy for a status conference. During the conference, the parties addressed discovery issues with the Court. As a result, the Court ordered that Plaintiffs produce damage calculations and Defendants produce a privilege log by June 21, 2023.

28.     In advance of the deadline for Plaintiffs to produce damage calculations, Defendants produced over 20 excel spreadsheets containing class-wide payroll records.

29.     On June 21, 2023, Plaintiffs served Defendants with class-wide damages.

30.     Between June 2023 and September 2023, Defendants deposed approximately 13 Plaintiffs and Plaintiffs took one Fed. R. Civ. P. 30(b)(6) deposition.

31.     After the Fed. R. Civ. P. 30(b)(6), Plaintiffs served Defendants with two additional deposition notices.

32.     On August 8, 2023, the parties notified the Court that they had agreed to mediation before former Magistrate Judge Steven M. Gold, to take place on September 29, 2023.

33.     On September 22, 2023, Plaintiffs served Defendants with their second request for the production of documents.

34.     In the lead up to the mediation, Plaintiffs compiled a 16-page mediation statement that contained 17 exhibits.

35.     At the September 29, 2023, mediation, the parties were able to generally agree to parameters of a settlement but were unable to commit to a settlement that day.

36.     After ongoing negotiations between the parties, and with the assistance of the mediator, on October 13, 2023, the parties entered into a Memorandum of Understanding outlining the terms of a settlement agreement for One Million Six Hundred Fifty Thousand Dollars and Zero Cents ($1,650,000.00).  **Exhibit ("Ex.") A**, Settlement Agreement ¶ 2.25

37.     On January 5, 2024, the Settlement Agreement was fully executed. *Id*.

## SETTLEMENT AGREEMENT

38.     The $1,650,000.00 settlement amount (the "Settlement Fund") is a compromise figure.

39.     In reaching the settlement, Class Counsel took into account the risks of establishing liability and class certification, decertification of the FLSA collective and considered the time, delay, and financial repercussions in the event of trial and appeal by Defendants.

40.     Although Plaintiffs believe their claims have merit, they recognize the legal, factual, and procedural obstacles to recovery, as Defendants have and will continue to vigorously contest Plaintiffs' claims and their ability to obtain class certification if the action does not settle. In light of the strengths and weaknesses of the case, F&S believes the settlement easily falls within the range of reasonableness because it achieves a significant benefit for Plaintiffs and Class Members in the face of several obstacles.

41.     The settlement negotiations were at all times hard fought and at arm's-length, and have produced a result that F&S believes to be in the best interests of the class in light of the costs and risks of continued litigation.  Moreover, in our estimation, and based on the data provided by Plaintiffs and Defendants, the settlement represents a significant percentage of the recovery that Plaintiffs and Class Members would have achieved had they prevailed on their claims and survived an appeal.[1]

42.     The Settlement Agreement identifies Class Members as all FLSA opt-ins, who have not been dismissed, as well as servers and bartenders employed by Defendants at the Covered Restaurants from October 3, 2010 through December 31, 2022. **Ex. A**, Settlement Agreement, ¶¶ 2.1, 2.16.

43.     On May 6, 2024, the parties entered into an addendum to the settlement agreement delaying Defendants' payment obligations until thirty-one (31) days from the date of an order granting Final Approval. **Ex. B**, Addendum to Settlement Agreement.

## ALLOCATION FORMULA

44.      All Class Members will be deemed eligible for a payment under this Settlement Agreement unless they opt out of the settlement.  *Id.* ¶¶ 2.22; 4.4

45.     A Class Member's proportionate share will be determined by the Claims Administrator pursuant to the following formula:

 a. Each Class Member will receive 1.5 points per workweek for Class Members who worked from October 3, 2010 through December 31, 2017;

 b. Each Class Member will receive 1 point per workweek for Class Members who worked from January 1, 2018 through preliminary approval;

---

[1] By obtaining $1,650,000.00, Plaintiffs recovered approximately 71.67% of their alleged unpaid minimum wage and overtime damages of $2,302,030.81 (not inclusive of liquidated damages or interest) or 30% of unpaid minimum wages, overtime pay, wage statements, and wage notice violations damages of $5,491,355.81.

     c.  The Settlement Fund, after deductions for Court-approved attorneys' fees and expenses, settlement administration fees and expenses, any Court-approved Enhancement Award, and all other court approved expenses or disbursements, will be divided by the aggregate number of points accrued by all of the Class Members and any points that would have been attributable to any individuals who opted-out of the settlement had they remained Class Members ("Point Value");

     d.  Each Class Member's total points will be multiplied by the Point Value to determine his or her "Individual Settlement Amount."

*Id.* ¶ 4.4.

46.    The difference in point allocations is meant to address changes in Defendants' policies starting in or around January 2018. In that regard, starting in January 2018, Defendants introduced revised tip credit notices and annual wage notices that arguably comply with the NYLL. In addition, Defendants testified that around this time, they conducted time studies related to the amount of time tipped employees spent performing non-tipped side work.

**PRELIMINARY APPROVAL AND NOTICE TO CLASS MEMBERS**

47.    The Court granted Preliminary Approval on April 19, 2024 directed that the Notice be sent to Class Members, and set October 9, 2024 as the date for a Fairness Hearing.  ECF No. 105.

48.    On May 23, 2024, the claims administrator sent the Court-approved Notice of Proposed Class Action Settlement ("Class Notice") by first-class mail to 780 Class Members.  **Ex. C**, Declaration of Amanda Myette ("Myette Decl.") ¶ 9.  The Class Notice informed Class Members of the terms of the settlement, as well of their right to opt out from the Settlement, object to the Settlement, or do nothing, and the implications of each such action.  *Id.*  The Class Notice also advised Class Members of applicable deadlines and other events, such as the Final Approval Hearing, and how Class Members could obtain additional information.  *Id.*  A sample of the Class Notice is attached to the Myette Decl. as Exhibit A. The Class Notice also informed Class Members of Named Plaintiff's requests for a service award, as well as Class Counsel's intention to seek one-

third of the settlement fund for attorneys' fees and costs.  *Id.*

49.    Prior to the mailing of the Class Notice, Class Counsel remained in constant contact with the claims administrator, as well as counsel for the Defendants, to ensure the accuracy of the Class List, confirming Class Members' dates of employment, updating addresses received from Class Members, and confirming the accuracy of the Individual Settlement Award calculations.

50.    The deadline to opt-out or object was July 23, 2024.  *Id.* at ¶ 9.

51.    No Class Members opted out of the Settlement.  *Id.* ¶ 12.

52.    No Class Members objected to the Settlement.  *Id.* ¶ 13.

53.    Since the mailing of the Class Notice, Class Counsel has spoken with Class Members to answer questions regarding the settlement and received phone calls from Class Members who have reacted positively to the settlement terms.

54.    The average individual settlement award is estimated to be $1,350.96 and the maximum individual award is estimated to be $9,918.14. *Id.* ¶ 14.

## **SERVICE AWARDS**

55.    Pursuant to the Settlement Agreement, and subject to Court approval, a service award $10,000 will be given to the Named Plaintiff in addition to his individualized award under the allocation formula, in recognition of the services he rendered on behalf of the Class.  **Ex. A**, Settlement Agreement ¶ 4.3 (A).

56.    The Named Plaintiff was instrumental in the initiation and prosecution of this action, and expended considerable time and effort to assist Class Counsel with this case. The Named Plaintiff's services included, but were not limited to: informing counsel of the facts initially and as the case progressed; providing counsel with relevant documents in his possession; encouraging many other individuals to participate in the action; remaining in contact with current

and former employees and informing them to contact Class Counsel to update their addresses and ensure their membership in the class; assisting Class Counsel in reviewing Defendants' document production; providing written discovery response; appearing for a deposition; assisting counsel to prepare for two mediations; and reviewing and commenting on the terms of the settlement.

57.     The Named Plaintiff also undertook a significant risk that he would be retaliated against by Defendants and/or "black balled" in the industry for the sake of the Class, as his name and information is public information.

58.     As a result of the Named Plaintiff commencing this action, Defendants have changed the policies at issue.

## ATTORNEYS' FEES & EXPENSES

59.      Pursuant to the Settlement Agreement, Class Counsel requests attorneys' fees equal to one-third of the Settlement Fund, or $550,000 and costs totaling $17,866.88.  **Ex. A**, Settlement Agreement ¶ 4.2(A); *See also*, Declaration of Douglas M. Werman ("Werman Decl.") ¶ 32.

60.     The Class Notice informed Class Members that Class Counsel will apply to the Court for attorneys' fees and costs (one-third of the Settlement Fund). **Ex. C**, Myette Decl., Ex. A.  No Class Member has objected to Class Counsel's request for attorneys' fees and costs. *Id*. at ¶¶ 12, 13.

61.     Class Counsel's request for one-third of the fund, or $550,000.00 is 1.27 times their current lodestar of $433,337.55. *See*, Werman Decl. ¶ 16.

### Firm Background and Experience

62.     F&S has significant experience prosecuting wage and hour cases, such as this one, and has obtained settlements in excess of $100 million for workers.  F&S has been appointed as

class and collective counsel in many Federal cases.

63.    *See, e.g.*, *Mangahas v. Eight Oranges Inc.*, No. 22-CV-4150 (LJL), 2024 WL 2801922 (S.D.N.Y. May 31, 2024); *Smith v. Akela Contracting LLC*, No. 22 Civ. 01186, ECF No. 104 (July 12, 2023); *Lanning v. Wells Fargo Bank, N.A.*, No. 20 Civ. 2055, ECF No. 55 (S.D.N.Y. Nov. 24, 2021); *Spiciarich v. The Gorman Group, LLC*, No. 20 Civ. 646, ECF No. 31 (N.D.N.Y. Apr. 15, 2021); *Bruno v. Wells Fargo Bank N.A.*, No. 19 Civ. 587 (RJC), 2021 WL 964938 (W.D. Pa. Mar. 15, 2021); *Hernandez v. Lochend Energy Services*, No. 20 Civ. 00064, ECF No. 44 (D.N.D. March 5, 2021); *Bruton v. Pioneer Natural Resources Company*, No. 20 Civ. 00203, ECF No. 20 (W.D. Tex. Jan. 27, 2021); *Kirby v. FIC Restaurants, Inc.*, No. 19 Civ. 1306 (FJS/ML), 2020 WL 3501398 (N.D.N.Y. Jun. 29, 2020); *Lu v. OD Inspections*, No. 20 Civ. 02063, ECF No. 24 (S.D. Tex. Dec. 24, 2020); *LeJeune v. Mammoth Energy Services, Inc.,* No. 19 Civ. 00286, ECF No. 102 (W.D. Tex. July 31, 2020); *Millin v. Brooklyn Born Chocolate*, No. 19 Civ. 3346, 2020 WL 2198125 (E.D.N.Y. May 6, 2020); *Warren v. MBI Energy Services, Inc.*, No. 19 Civ. 00800, ECF No. 33 (D. Colo. Feb. 25, 2020); *Carr v. Patriot Well Solutions, LLC*, No. 5:19 Civ. 00212, ECF No. 62 (W.D. Tex. Feb. 11, 2020); *Murillo v. Berry Bros. General Contractors, Inc.*, No. 6:18-cv-1434, 2019 WL 4640010 (W.D. La. Sept. 23, 2019); *Borecki v. Raymours Furniture Company, Inc*., No. 17 Civ. 01188, ECF No. 98 (Sept. 10, 2019); *Black v. P.F. Chang's China Bistro, Inc.*, No. 16 Civ. 03958, ECF No. 95 (N.D. Ill. Nov. 16, 2018); *Schaefer v. M&T Bank Corporation*, No. 14 Civ. 06622, ECF No. 90 (S.D.N.Y. Nov. 1, 2018); *De Jesus et al. v. Incinia Contracting, Inc.*, No. 17 Civ. 5733 (KHP), 2018 WL 3343236 (S.D.N.Y. June 22, 2018); *Suarez v. Rosa Mexicano Brands Inc.*, No. 16 Civ. 5464 (GWG), 2018 WL 1801319, (S.D.N.Y. April 13, 2018); *Zorrilla v. Carlson Rests., Inc*., No. 14 Civ. 2740 (AT), 2018 WL 1737139 (April 9, 2018); *Alverson v. BL Restaurant Operations LLC*, No. 16 Civ. 00849 (OLG) (RBF), 2017 WL 5491998

(W.D.T.X. Nov. 11, 2017); *Sanchez v. Bentzys Construction, Inc.*, No. 16 Civ. 07072 (E.D.N.Y.

Sept. 19, 2017); *Melito v. American Eagle Outfitters, Inc.*, No. 14 Civ. 2440 (VEC), 2017 WL

3995619 (S.D.N.Y. September 11, 2017); *Hotaranu v. Star Nissan Inc.*, No. 16 Civ. 5320 (KAM)

(RML), 2017 WL 1390808 (E.D.N.Y. April 12, 2017);  *Crosby et al. v. Lasership, Inc.*, No. 15

Civ. 08694 (GWG), ECF No. 171 (S.D.N.Y. June 30, 2017); *Almonte v. Marina Ice Cream Corp.*,

No. 16 Civ. 00660 (GBD), 2016 WL 7217258 (S.D.N.Y. Dec. 8, 2016); *Illoldi v. Koi NY LLC*, No.

1:15 Civ. 06838 (VEC), 2016 WL 5900218 (S.D.N.Y. Oct. 7, 2016); *Hadel v. Gaucho*, No. 15

Civ. 3706 (RLE), 2016 WL 3647600 (S.D.N.Y. June 30, 2016); *Chhab v. Darden Restaurants

Inc.*, No. 11 Civ. 08345 (NRB), 2016 WL 3004511 (S.D.N.Y. May 20, 2016); *Karic v. The Major

Automotive Companies, Inc.*, No. 09 Civ. 5708 (CLP), 2016 WL 1745037 (S.D.N.Y. April 27,

2016); *Gonqueh v. Leros Point to Point, Inc.*, 14 Civ. 5883 (GHW), 2016 WL 791295 (S.D.N.Y.

Feb. 26, 2016); *Bravo v. Palm W. Corp.*, No. 14 Civ. 9193 (SN), 2015 WL 5826715 (S.D.N.Y.

Sept. 30, 2015); *Long v. HSBC USA Inc.*, No. 14 Civ. 6233 (HBP), 2015 WL 5444651 (S.D.N.Y.

Sept. 11, 2015); *Carpenter v. Paige Hospitality Group, LLC*, No. 13 Civ. 4009 (GBD), 2015 U.S.

Dist. LEXIS 82771 (S.D.N.Y. June 2, 2015); *Hamadou v. Hess Corporation*, No. 12 Civ. 250

(JLC), 2015 WL 3824230 (S.D.N.Y. June 18, 2015); *Espinoza v. Wanrong Trading Corp.*, No. 13

Civ. 1727 (FB), ECF No. 33 (E.D.N.Y. December 23, 2014); *Flynn v. N.Y. Dolls Gentlemen's

Club*, No. 13 Civ. 6530 (PKC)(RLE), 2014 WL 4980380 (S.D.N.Y. Apr. 28, 2015); *Flores v. One

Hanover, LLC*, No. 13 Civ. 5184 (AJP), ECF No. 40 (S.D.N.Y. June 9, 2014); *Simsek v. New York

State Catholic Health Plan, Inc.*, No. 11 Civ. 5393 (FB)(JMA), 2014 U.S. Dist. LEXIS 22979

(E.D.N.Y. Feb. 14, 2014); *Diombera v. The Riese Organization, Inc.*, No. 12 Civ. 8477 (RJS)(HP),

ECF No. 73 (S.D.N.Y. Oct. 21, 2013); *Sukhnandan v. Royal Health Care of Long Island LLC*, No.

12 Civ. 4216 (WHP)(RLE), 2013 WL 4734818 (S.D.N.Y. Sept. 3, 2013); *Yuzary v. HSBC Bank*

*USA, N.A.*, No. 12 Civ. 3693 (PGG), 2013 WL 5492998 (S.D.N.Y. Oct. 2, 2013); *Tiro v. Pub. House Investments, LLC*, No. 11 Civ. 7679 (CM), 2013 WL 4830949 (S.D.N.Y. Sept. 10, 2013); *Chang v. BD Stanhope, LLC*, No. 10 Civ. 8577 (TPG), ECF No. 48 (S.D.N.Y. Nov. 15, 2012); *Girault v. Supersol 661 Amsterdam, LLC*, No. 11 Civ. 6835 (PAE), 2012 WL 4748101 (S.D.N.Y. Oct. 4, 2012); *Lovaglio v. W & E Hospitality Inc.*, No. 10 Civ. 7351 (LLS), 2012 WL 2775019 (S.D.N.Y. July 6, 2012); *Matheson v. The Glazier Group, Inc.*, No. 09 Civ. 4212 (DAB), 2011 WL 6268216 (S.D.N.Y. Dec. 13, 2011); *O'Dell. v. AMF Bowling Centers, Inc.*, No. 09 Civ. 759 (DLC), 2009 WL 6583142 (S.D.N.Y. Sept. 18, 2009).

64.    I have been employed with F&S since September 2010 as an intern (2010 to 2011), law clerk (2011), associate (2011 to July 2019), and partner (July 2019 through the present). During the twelve-plus years that I have worked at F&S, I have exclusively represented plaintiffs in employment litigation and other employee rights matters – specializing in wage and hour class/collective actions – and successfully litigated and resolved cases as both a supporting and lead attorney. I am licensed to practice law in the State of New York, the Second Circuit and the United States District Courts for the Northern, Eastern, and Southern Districts of New York.  I graduated *cum laude* from the State University of New York at Fredonia in 2006 and received a *Juris Doctor* degree from New York Law School in 2011. While in Law School, I served as a member of the New York Law School Moot Court Association where I was elected the Association's Wagner Co-Chair and ran New York Law School's employment law moot court competition. In addition, I served as a Staff Editor of the Media Law and Policy Journal where my work focused on the relationship between emerging technologies and employment law.  I am a member of the National Employment Lawyers Association ("NELA"), NELA's New York Chapter, the New York County Lawyer's Association ("NYCLA"), and the American Bar

Association ("ABA"). I have served as a panelist at CLE presentations for wage and hour issues for NELA and NYCLA.

65.    Brian S. Schaffer received a *Juris Doctor* degree (dean's list) from New York Law School in 2003.  Mr. Schaffer was admitted to the bar of the State of New York in 2004 and was also admitted to the bars of the Second Circuit Court of Appeals and the United States District Courts for the Southern, Eastern, Northern, and Western Districts of New York.  Mr. Schaffer is a member in good standing of each of these bars.  Mr. Schaffer became a partner of F&S in January 2008.  Prior to starting F&S, Mr. Schaffer was employed by The Law Firm of Louis Ginsberg, P.C., a firm that specializes in the representation of individuals in employment law. Thereafter, Mr. Schaffer was employed by two civil litigation firms in Manhattan, Freiberg & Peck, LLP and Weiner, Millo & Morgan, LLC.   Since starting F&S in 2008, Mr. Schaffer has exclusively represented plaintiffs in employment litigation and other employee rights matters.  Mr. Schaffer has successfully argued cases in the New York State Appellate Division.  He is a member of the NELA, NYCLA, and the ABA. Mr. Schaffer has served as a panelist at CLE presentations for wage and hour issues for NELA, NYCLA, American Conference Institute (ACI) and Lawline.  Mr. Schaffer has frequently been contacted by the media and the press to discuss current employment law related issues and was a contributing editor to the ABA's 2015 and 2018 FLSA treatises.  In addition, Mr. Schaffer was nominated to be on NELA's wage & hour committee due to his reputation within the plaintiff's bar.

66.    Katherine Bonilla has been employed at F&S since November 2021 as an associate attorney. Ms. Bonilla graduated from John Jay College of Criminal Justice in 2015 and received her J.D. from The Benjamin N. Cardozo School of Law in 2019. While in law school, Ms. Bonilla was a Notes Editor for the Journal of International & Comparative, Policy & Ethics Law Review,

and interned at the New York State Attorney General's office and the National Labor Relations Board. Ms. Bonilla was admitted to practice in the state of New York in 2020. Prior to joining F&S, Ms. Bonilla worked at a boutique employment firm where she worked on cases focusing on employment discrimination and sexual harassment. During her time at F&S, Ms. Bonilla has exclusively represented Plaintiffs in employment litigation, focusing on wage and hour class/collective actions – and has successfully litigated and resolved cases as both a supporting and lead attorney. She is also admitted in the United States District Court for the Southern and Eastern District of New York. Ms. Bonilla is a member of NELA.

67.     Hunter G Benharris has been employed at F&S since January 2019 as an associate attorney. Mr. Benharris graduated from The Pennsylvania State University in 2015, and Brooklyn Law School in 2018. While at F&S, Mr. Benharris has assisted on or independently handled over 50 wage and hour employment matters. During his time in law school, Mr. Benharris interned at Virginia & Ambinder, LLP, providing support on wage and hour matters. Mr. Benharris also participated in Brooklyn Law School's employment clinic, representing employees in unemployment insurance proceedings. Mr. Benharris is also a member of NELA's New York Chapter. Mr. Benharris is licensed to practice law in the State of New York, and is admitted in the Southern, Eastern, Northern, and Western District Courts of New York.

68.     David J. Sack has been employed at F&S since January 2020 as an associate attorney. Mr. Sack graduated from Syracuse University in 2016, and Touro Law Center in 2019. While in law school, Mr. Sack interned as a law clerk with F&S, providing support on wage and hour matters. Mr. Sack is a member of NELA's New York Chapter. Mr. Sack is licensed to practice law in the State of New York and is admitted in the Southern, Eastern, and Northern Districts of New York.

69.    Nicole D'Apice has been employed at F&S since November 2016 as an administrative assistant.  Ms. D'Apice graduated from College of Staten Island in June 2016 with a B.A. in Geography.

70.    Class Counsel's skill and experience were directly responsible for bringing about the positive settlement and weigh in favor of granting the requested fees.

71.    Based on Class Counsel's extensive experience in precisely this type of litigation and our familiarity with the factual and legal issues in this case, we have reached the firm conclusion that the proposed settlement is clearly in the best interests of the Named Plaintiffs, Opt-In Plaintiffs and the Classes.

**Time Spent on the Litigation**

72.    As of the filing of the instant motion, F&S has spent 453.25 hours litigating and settling this case, which includes approximately 435.25 attorney hours.  Throughout the litigation, Class Counsel has been available to clients around the clock via phone and email. The hours reported are reasonable for a case of this complexity and magnitude and were compiled from contemporaneous time records maintained by each attorney participating in the case.  F&S keeps contemporaneous billing records for all matters, and the contemporaneous billing records are available at the Court's request.

73.    Due to the experience of its attorneys in representing workers in litigation of this type, Class Counsel utilizes a small team of attorneys and support personnel to minimize duplication of efforts and maximize both efficiency and billing judgment.

74.    Class Counsel ordinarily and regularly bills legal time on an hourly fee basis, based upon each attorney's standard hourly rate. Currently, Class Counsel's hourly rates range from $675 to $525 per partner hour, $200 to $275 per associate's hour and $125 per administrative assistant's

hour.

75.     Since 2014, all of F&S's cases have been taken on pure contingency, including all of Class Counsel's out of pocket costs and expenses.  Thus, when Class Counsel's lawyers spend time on contingency matters, they do so at a significant risk for the firm.  Class Counsel frequently turns away cases, including hourly matters.  For example, as of November 13, 2014, the date of the last hourly matter undertook by the firm, the partner rate for Mr. Schaffer was billed to clients at $500.00 per hour.

76.     Below are charts summarizing the specific attorneys, their hourly rates, and their total time worked on this matter, in addition to the total paralegal time.

| FITAPELLI & SCHAFFER, LLP | | | |
|---|---|---|---|
| **INDIVIDUAL, POSITION** | **HOURLY RATE** | **TOTAL HOURS** | **FEES** |
| Brian S. Schaffer, Partner | $675 | 123.2 | $83,160.00 |
| Frank S. Mazzaferro, Partner | $525 | 298.4 | $156,660.00 |
| Katherine Bonilla, Associate | $200 | 176.1 | $35,220.00 |
| David Sack, Associate | $225 | 6.9 | $1,552.50 |
| Hunter Benharris, Associate | $275 | 58.8 | $16,170.00 |
| Nicole D'Apice, Admin. Asst | $125 | 15.95 | $1,993.75 |
| **TOTAL** | | **453.25** | **$294,756.25** |

77.     In my experience, administering class and/or collective settlements of this nature and size requires a substantial and ongoing commitment, and the requested attorneys' fees are not based solely on time and effort already expended, they are also meant to compensate Class Counsel for time that we will be required to spend administering the settlement in the future.  For example, Class Counsel anticipates spending additional time with respect to preparation for the Fairness Hearing and administering the settlement.

78.     In Class Counsel's experience, law firms that represent plaintiffs in employment

matters typically charge their clients at least one-third of their gross recoveries when they represent them on a contingency basis.

### Risks of Litigation

79.    Class Counsel undertook to prosecute this action without any assurance of payment for their services, litigating this case on a wholly contingent basis in the face of tremendous risk.  The retainer agreement signed by Named Plaintiff reflects this.  Large-scale wage and hour cases of this type are, by their very nature, complicated and time-consuming. Attorneys undertaking representation of large numbers of affected employees in wage and hour actions inevitably must be prepared to make a tremendous investment of time, energy, and resources. Due also to the contingent nature of the customary fee arrangement, attorneys are asked to be prepared to make this investment with the very real possibility of an unsuccessful outcome and no fee of any kind.  For example, in *Benavidez v. Plaza Mexico, Inc.*, No. 09 Civ. 5076 (KNF) (S.D.N.Y.) and *Paez v. Plaza Mexico, Inc.*, No. 09 Civ. 9574 (KNF) (S.D.N.Y.) defendants filed bankruptcy after extensive discovery and motion practice.  Even after the court entered a judgment against the defendants in excess of $5,000,000.00 after a trial on damages, neither the plaintiffs nor F&S have collected any money in connection with both those cases.    In *Matheson v. T-Bone Restaurant, LLC a/k/a Strip House New York*, No. 1:09-cv-04214 (DAB) (S.D.N.Y.), at the time of the plaintiffs' final approval motion regarding class settlement, F&S' lodestar was negative 1.43.  During the subsequent three years, F&S has expended further time and resources in collecting the settlement payment; to date, the defendants remain in default as they still owe $123,574.64 out of $495,000.

80.    As an example showing the risks of proceeding to trial, in *Rios et al. v. Louya Corp. et al.*, No. 1:14-cv-06800 (GHW) (S.D.N.Y.), F&S obtained a verdict of $1,044,512.62 on behalf

seven restaurant workers after a week-long bench trial. However, due to the defendants' bankruptcy filings, it is unlikely that the plaintiffs or F&S will recover any significant money in that case. The above three examples highlight the risks associated with settlement and obtaining a judgment after trial. Unfortunately, F&S has also recovered zero or has had a negative lodestar in other cases as well.

81.    As an example showing the resources required for and risks associated with taking a hybrid class/collective case to the decertification and Rule 23 class certification stage, in *Scott v. Chipotle Mexican Grill, Inc.* No. 12 Civ. 8333 (ALC)(SN) (S.D.N.Y.), Class Counsel and their co-counsel took or defended approximately 100 depositions and formally responded to written discovery for more plaintiffs. Moreover, after five years of litigation and substantial discovery, the *Scott* plaintiffs' collective of over 500 employees was decertified and simultaneously the plaintiffs were denied class certification. *See* No. 12 Civ. 8333 (ALC)(SN), 2017 WL 1287512, at *1 (S.D.N.Y. Mar. 29, 2017). As a result, plaintiffs appeal and litigation of the matter will continue for the foreseeable future.

82.    As an example showing the risks of continued litigation to the summary judgment stage, in *Martin et al. v. Sprint United Management Co., et al.*, No 15 Civ. 05237 (PAE), ECF No. 322 (S.D.N.Y. Sept. 27, 2017), Judge Engelmayer granted the defendants' Motion for Summary Judgment, resulting in a full dismissal of the plaintiffs' individual and collective wage and hour claims.

83.    As can be seen from the examples above, Class Counsel stood to gain nothing in the event the case was unsuccessful.

84.    Additionally, in F&S's experience, restaurant wage and hour cases are inherently high-risk due to often unexpected closings and collection issues, notwithstanding a restaurant's

reputation or established years of business.  For example, Artisanal Bistro, Koi-SoHo, and other high end restaurants operating in Manhattan that F&S previously sued for similar wage issues have closed within the last 2 years, despite their location, size, and prestige.

85.     To date, Class Counsel has worked without compensation of any kind, and the fee has been wholly contingent upon the result achieved.  Class Counsel continues to take on difficult cases like this one because we believe that they are important as many individual workers may be unwilling or unable to front the costs of litigation for an outcome that is uncertain.

**Litigation Costs and Expenses**

86.     Class Counsel also incurred the following out-of-pocket expenses prosecuting the litigation as part of its request for one-third of the settlement fund, which were incidental and necessary to the representation of the Classes:

| FITAPELLI & SCHAFFER LLP | |
|---|---|
| FedEx / Postage | $81.43 |
| FOIA Request | $20.00 |
| Mediations | $9,427.92 |
| Depositions | $5,609.48 |
| Filing Fee | $400.00 |
| Total | $15,538.83 |

*     *     *

**EXHIBITS**

87.     Attached as **Exhibit A** is a true and correct copy of the parties' Settlement Agreement, which was fully executed by the parties on August 4, 2017.

88.     Attached as **Exhibit B** is a true and correct copy the Addendum to Settlement Agreement.

89.    Attached as **Exhibit C** is a true and correct copy of the Declaration of Amanda Myette attaching true and correct copies of the Class Notice sent to Class Members.

90.    Attached as **Exhibit D** is a true and correct copy of Plaintiffs' proposed Order granting Plaintiffs' Motion for Final Approval of Settlement.


Dated: New York, New York
        September 25, 2024



                                        Respectfully submitted,


                                        _____
                                        Frank J. Mazzaferro

                                        **FITAPELLI & SCHAFFER, LLP**
                                        Brian S. Schaffer
                                        Frank J. Mazzaferro
                                        Katherine Bonilla
                                        28 Liberty Street, 30th Floor
                                        New York, New York 10005
                                        Telephone: (212) 300-0375


                                        *Attorneys for Plaintiffs and*
                                        *the Class*